**STATE of Missouri ex inf. George PEACH, Circuit Attorney ex rel. CITY OF ST. LOUIS, Relator-Respondent,**

v.

**MELHAR CORPORATION, Respondent-Appellant.**

No. 44913.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 1, 1983.

Motion for Rehearing/Transfer to
Supreme Court Denied April 15, 1983.

der Ordinance 55312 of the City of St. Louis and also denied Melhar's counterclaim for declaratory judgment and injunction which sought essentially a declaration of validity of Melhar's franchise. The ordinance in question was enacted and approved in April 1969, and granted to Melhar a 25 year non-exclusive franchise for the construction and operation of a cable television system utilizing the streets and alleys of the City of St. Louis.

Initially Melhar contends that summary judgment may not properly be entered in a *quo warranto* proceeding to oust a corporation from a franchise. We have been cited to no case which establishes such a broad rule. Rule 98.01 which controls *quo warranto* proceedings provides that such proceedings shall be "... governed by and conform to the rules of civil procedure and the existing rules of general law on the subject ...." Rule 74.04 provides for summary judgment. Nothing in Rules 98.01 through 98.06 or in the general law makes summary judgment inappropriate in any quo warranto proceeding. Rule 74.04(b) prevents summary judgment from being entered "unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law." Such showing is not made if there is "any genuine issue as to any material fact." Rule 74.04(c). It is to be remembered that "[n]ot every factual dispute, however, will bar summary judgment; the dispute must involve a material fact; that is, one which has legal probative force as a controlling issue." *Seliga Shoe Stores v. City of Maplewood,* 558 S.W.2d 328 (Mo.App.1977) [1–3]. If the requirements of Rule 74.04 are met, summary judgment is fully proper in *quo warranto.* See, for example, *State ex inf. Graham v. Hurley,* 540 S.W.2d 20 (Mo. banc 1976).

Melhar contends that three genuine issues of material fact were in dispute, i.e., its intent to abandon the franchise, laches by relator, and the public benefit to be gained by ouster. Analysis of these contentions requires some exposition of the factual background of the controversy.

Michael Henderson, Oakland, Cal., Rosecan & Kimbrell, St. Louis, for respondent-appellant.

Robert H. Dierker, Jr., Asst. City Counselor, St. Louis, for relator-respondent.

SMITH, Judge.

Melhar Corporation appeals from a summary judgment against it. The judgment granted relator a permanent writ in *quo warranto* ousting Melhar from any rights, privileges and franchises granted to it un-

Prior to passage of the ordinance in 1969, Melhar made a proposal to the City seeking a franchise to install and operate a cable television system throughout the city. One and possibly another company made similar applications. Following public hearings, the franchise was granted to Melhar through Ordinance 55312. The ordinance included the following provisions:

"Sec. 3. . . . The Company shall, at all times during the life of this Franchise, be subject to . . . all lawful exercise of the police power of the City, and to such reasonable regulation as the City shall hereafter by resolution or ordinance provide, including the right of the City to amend, alter or repeal this ordinance in whole or in part and to forfeit this Franchise at any time for misuse or non-use; . . . ."

"Sec. 14. *Term of Franchise.* The Franchise and rights herein granted shall take effect and be in force from and after the final passage hereof, as required by law, and upon filing of acceptance by the Company with the City Register and shall continue in force and effect for a term of twenty-five (25) years after the effective date of the Franchise.

(1) *Performance requirements.* The Company, promptly following the effective date hereof, shall make any necessary application to the Federal Communications Commission for authority with respect to the Distribution System, including authority with respect to the operation of any necessary microwave service, and shall proceed with all due diligence to acquire all other necessary governmental licenses and authorizations for the construction of the Distribution System and the furnishing of Community Antenna Service. The Company shall, in good faith, within six (6) months following the receipt of all necessary rights from public and private parties and all necessary governmental licenses and authorizations complete the execution of all contracts for construction of the Distribution System and construction shall be completed with reasonable speed. Said Distribution System shall commence operation within one year after the execution of all contracts."

"Sec. 17. PENALTIES. Any violation by the Company, . . . of the provisions of this Franchise or any material portions thereof, or the failure promptly to perform any of the provisions thereof, shall be the cause for the forfeiture of this Franchise and all rights hereunder to the City after written notice to the Company and continuation of such violation, failure or default."

The ordinance also contained provisions requiring specified insurance, bonds, reports, and rules and regulations, some of which were to be filed with the City Register. The ordinance also provided for payment to the City as a franchise fee 6% of the annual gross operating revenues obtained by the Company from sales of television signals within the City. Semi-annual reports of such operating revenues were to be filed with the Comptroller.

Melhar filed a bond with the City but no acceptance of the franchise was ever filed and none of the various reports and other documents required by the ordinance were ever filed. Other than its two principal stockholders, Melvin and Harold Dubinsky, Melhar never had any employees. No cable or wires were ever strung or laid; no cable television service was ever provided by Melhar to any resident of the City of St. Louis. The City received no money under the franchise. On September 26, 1979, the City Counselor wrote Melhar enumerating the failures of performance and stating that if said failures were not cured within 30 days the franchise would be declared forfeited. Melhar made no response to this letter except discussing the matter with the mayor and maybe obtaining a 30 day extension. Based upon this letter, Melhar's accountant wrote off the franchise on the company's books, mistakenly, Melhar now contends. Nothing further was done by the City in regard to Melhar's franchise until this suit was filed on March 31, 1981, when the City became aware that Melhar was seeking excavation permits for installation of cable. On April 30, 1981, the City enacted an ordi-

nance repealing Ordinance 55312. The repealing ordinance listed specifically the failures of performance of Melhar under Ordinance 55312.

Through largely uncontested affidavits, Melhar presented its activities from the enactment of Ordinance 55312 until the filing of suit. At the time of making its proposal to the City to supply cable television service, Melhar planned to use an experienced cable operator (Jerrold) to build the system. This plan was set forth in the proposal. Shortly after the passage of the ordinance, Melhar began preparations to create a cable system. Arrangements with Jerrold foundered, and recognizing its need for expert assistance, Melhar entered into an agreement in December 1971 with Cox Cable Communications. Both Cox and Melhar believed that a successful cable operation required microwave importation of the signal of an independent "superstation" such as WGN in Chicago. Federal Communications Commission "anti-leapfrogging" regulations limited Melhar to importation of one station each from Kansas City and Bloomington, Indiana. In 1972, Melhar requested and obtained a F.C.C. certificate of compliance to operate a cable television system in St. Louis. This certificate was based upon importation of the Bloomington and Kansas City stations and was for a five year period. Certain delays occurred because of construction difficulties in the microwave carrier. In 1975, Melhar and Cox sought relief from the F.C.C. "anti-leapfrogging" regulations and in 1976 the F.C.C. abandoned those regulations. Melhar was then free to import the WGN signal. Following that abandonment, Melhar expected Cox to begin construction. Cox however did not, but instead began reevaluating its participation in the St. Louis market. In June 1979, Cox had decided that the cable venture in St. Louis was not financially lucrative and sought to terminate its agreement with Melhar. This was done in April 1980 by mutual agreement between Melhar and Cox. Melhar then sought to find another cable company to construct and operate the system. After several unsuccessful explorations, Melhar entered into a letter of intent with TeleCommunications, Inc. (T.C.I.) in March 1981 and the two companies began actively planning the installation of the cable system. Their further efforts were thwarted by this lawsuit and the City's refusal to issue the necessary permits.

■ A franchise is contractual in nature. *Kansas City Power & Light Co. v. Town of Carrollton,* 346 Mo. 802, 142 S.W.2d 849 (1940) [6–10]; *State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co.,* 345 Mo. 6, 131 S.W.2d 525 (banc 1939) [6, 7]. The ordinance granting the franchise contained terms and conditions to be met by Melhar. Failure to meet those terms and conditions was a breach of the franchise agreement. In Sec. 3 of the ordinance, the City reserved the right to revoke the franchise for non-use and in Sec. 17 reserved the right to forfeit the franchise for breach of the conditions of the ordinance.[1] Those conditions included prompt construction and operation of a cable television service.

■ At the time the trial court determined the motion for summary judgment, the City had exercised its specifically reserved right to forfeit the franchise for non-use and breach of conditions by enactment of the repealing ordinance. The case therefore is in a somewhat different posture than the usual quo warranto action. The contract having provided authority for forfeiture and the city having exercised that authority, the determination for the trial court, and for us, is whether the City's forfeiture of the franchise was within the terms of the ordinance granting the franchise.

The basis of the City's forfeiture was non-use of the franchise. Respondent equates non-use with abandonment, and

1. Relator seeks to utilize the non-filings of documents heretofore set forth to justify the forfeiture of the franchise. We are unable to conclude that these non-actions were necessarily a breach or that they were not agreed to by the City. We do not believe their legal effect can be determined on summary judgment.

concludes from that that intent to abandon is a necessary element to justify forfeiture. Although the terms non-use and abandonment have been used on occasion interchangeably by the courts, we do not find them synonymous. Those cases in which interchangeable use of the words occur involve fact situations in which use was initially made of the franchise, such use was discontinued and thereafter ouster was sought. *State ex inf. Jones ex rel. City of St. Louis v. Light & Development Co. of St. Louis,* 246 Mo. 618, 152 S.W. 67 (1912). Such cases are in reality abandonment cases in which present nonuser is evidence of abandonment. The case before us is not an abandonment case. Melhar never utilized the franchise or provided the service for which it was issued. At most Melhar took certain actions preliminary to use of the franchise, but no use ever occurred. The ordinance specifically provided that cable television service was to be supplied without undue delay. It was not supplied during the twelve year period following the granting of the franchise. That time comprised almost one-half of the total term of the franchise. In short there was total nonuser of the franchise for a twelve year period. The language of the court in *State ex inf. Jones ex rel. City of St. Louis v. Light & Development Co. of St. Louis,* supra [2, 3], clearly deals with the status of the franchise now before us:

"Furthermore, we do not think that the rights of the state, in case of nonuser, to resume the privileges granted, can be defeated by an intention which has remained hidden in the minds of the owners, and first brought to light after 20 years. By accepting the terms of the ordinance, the grantee of the privilege impliedly agreed to use it for the public benefit .... When the grantee, by continued nonuser, fails for a long period of time to keep this implied contract, his rights in the street are forfeit. In such case mere intention to possibly resume the use at some uncertain future day cannot save the forfeiture. Service to the public is of the essence of the contract which arose upon acceptance of the

terms of [the] ordinance ... and willful nonuser in this regard gives the right of forfeiture."

■ Forfeit of the Melhar franchise was authorized for nonuser. Melhar's intention to use the franchise was of no consequence and whether it existed or not was not a material fact in determining the question of forfeiture. The record clearly demonstrates nonuser for 12 years. The City properly invoked its right to forfeit the franchise. *See also State ex rel. Kansas City v. East Fifth St. Ry. Co.,* 140 Mo. 539, 41 S.W. 955 (1897).

■ Respondent also contends that the question of laches by the City presented a material fact in dispute. Laches is applied in quo warranto proceedings. *King v. Village of Praethersville,* 542 S.W.2d 578 (Mo. App.1978) [2–4]; *State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co.,* 331 Mo. 337, 53 S.W.2d 394 (banc 1932). The cases in which laches are applied involve situations in which either the relator acquiesced in the respondent's exercise of unauthorized privileges or sought ouster for an initial default followed by exercise of the franchise. We have found no case where laches was found applicable to an alleged acquiescence in the franchise holder's nonuse of its franchise.

■ Respondent points to the letter of the city counselor of September 26, 1979. It contends that the failure of the city to follow-up on the letter and actually declare a forfeiture until Melhar was ready to utilize the franchise constitutes laches. This contention is also answered by *State ex inf. Jones v. Light & Development Co. of St. Louis, supra,* [4]:

"But, contends the appellant, even if all this be true, still the information in *quo warranto* comes too late, and the rights to forfeiture ceased when the appellant was able and willing to resume the use, and in fact attempted to do so .... Here the cause for forfeiture has not ceased. The nonuser has continued. This franchise was and is in complete disuse. It had been to all intents and purposes aban-

doned. The fair inference was that all claims thereunder had been surrendered to the state. There was, therefore, no occasion for the state to assert its right to forfeit this dead and apparently forgotten franchise until some attempt should be made to galvanize it into life. It cannot be that such attempt in itself deprives the state of a right of forfeiture which was complete before the attempt was made."

Melhar's franchise was "dead and apparently forgotten" until Melhar sought excavation permits in March 1981. The city moved promptly at that time to have the franchise forfeited by the court and shortly thereafter enacted the repealing ordinance. There was no laches as a matter of law and therefore no material fact in dispute based upon that alleged defense.

■ Respondent finally contends that the question of the "public good" presents a material fact in dispute. This contention is based upon certain language in *State at inf. of McKittrick v. Siebert,* 228 Mo.App. 1133, 65 S.W.2d 129 (Mo.App.1933) [9–11] indicating that the writ of quo warranto will not issue where ouster would not be in the public interest or serve any good end or purpose. The franchise ordinance did not condition repeal of the franchise upon any findings of public good. Enactment of the repealing ordinance was based upon Melhar's breach of its contract. The City's board of aldermen and mayor act in the public behalf, and their enactment of the repealing ordinance is a determination that termination of the franchise for breach of contract was in the public interest. It is not the province of the court to determine whether the exercise of the City's clear right of termination was in the public interest.

Judgment affirmed.

DOWD, P.J., and GAERTNER, J., concur.