UNITED STATES of America, Plaintiff,

v.

James E. GRAY and Charles J. McNally, Defendants.

Crim. No. 83–10.

United States District Court, E.D. Kentucky, Lexington.

Oct. 19, 1988.

H. Marshall Jarrett, Public Integrity Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., Jane Graham, Asst. U.S. Atty., U.S. Dept. of Justice, Lexington, Ky., for U.S.

Frank E. Haddad, Jr., Louisville, Ky., for McNally.

William E. Johnson, Frankfort, Ky., James A. Shuffett, Lexington, Ky., for Gray.

## MEMORANDUM OPINION

WILHOIT, District Judge.

These criminal proceedings are before the court upon a remand from the United States Supreme Court and the Sixth Circuit Court of Appeals, 841 F.2d 1127, and defendants' motions to dismiss the indictment in accordance with the appellate mandates. The government is seeking a retrial.

## PROCEDURAL HISTORY

On July 30, 1983, an indictment was returned against the defendants charging one count of conspiracy to violate the federal mail fraud statute with seven substantive violations. 18 U.S.C. § 1341. Six of the seven substantive mail fraud counts were dismissed by the trial court on December 16, 1983 because of the government's failure to allege that tax returns mailed by the defendants were false or fraudulent.[1]

The trial of this action began on January 23, 1984 and lasted for 25 working days spanning 7 weeks. On March 6, 1984, the jury found the defendants guilty on both remaining counts. The convictions were affirmed by the Sixth Circuit Court of Appeals on May 12, 1986. *United States v. Gray*, 790 F.2d 1290 (6th Cir.1986). The defendants appealed to the Supreme Court and the judgment of the Court of Appeals was "reversed and the case remanded for proceedings consistent with this opinion." *McNally v. United States*, 483 U.S. 350, —, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292, 303 (1987). The Sixth Circuit, by mandate

dated April 4, 1988, "remanded [this action] to the district court for further proceedings consistent with the Supreme Court's disposition." (Record, docket entry no. 191).

In a hearing held on April 29, 1988, the government made an oral motion for retrial on the entire indictment. This court set up a briefing schedule and the parties filed briefs in support of their respective positions. As part of their response to the motion, the defendants have also filed separate motions to dismiss.

Of particular importance to the resolution of this matter are the theories upon which the government based the indictment, the government's closing argument, the resulting jury instructions, and the manner in which these theories were disposed of on appeal. In their motion to dismiss, the defendants assert various grounds for dismissal including sufficiency of the evidence and double jeopardy.

## FACTS

The underlying facts in this action have been adequately set forth within the Sixth Circuit and Supreme Court opinions; however, for the sake of clarity here, some but not all will be revisited.

The defendants, along with a third individual, Howard P. "Sonny" Hunt, allegedly utilized a company called Seton Investments, Inc. ("Seton") to funnel certain insurance commissions for workers compensation insurance to the personal use of Hunt and the defendant Gray from 1975 to 1981. Although the defendant McNally was listed as an officer, director, and sole stockholder of Seton, the government presented evidence which indicated that McNally was only acting as Seton's frontman for the real owners, Hunt and Gray. During the operation of this scheme, Hunt was the Kentucky Democratic Party Chairman and Gray was a public official of the Commonwealth of Kentucky.

---

1. This decision was affirmed by the Sixth Circuit Court of Appeals and was not pursued by the government in its appeal to the Supreme Court. *United States v. Gray*, 790 F.2d 1290 (6th Cir.1986).

## THEORIES OF THE CASE

To support the conspiracy count to commit mail fraud, the government relied upon four theories. The first two theories dealt with a conspiracy to defraud the Commonwealth of Kentucky of its right to have its affairs conducted honestly and impartially and of its right to be made aware of all pertinent facts in the expending of funds to pay for insurance. (Indictment, p. 4). At the time the indictment was drafted, both theories were supported by a long line of Court of Appeals decisions holding that defrauding citizens of their *intangible rights* to honest and impartial government can be a violation of the mail fraud statute. *McNally*, 483 U.S. at —, 107 S.Ct. at 2879, 97 L.Ed.2d at 299. The third theory involved a more *traditional* violation of mail fraud by asserting a conspiracy to obtain money and other things of value by false representations. *Id.* at 5. Finally, the indictment also charged a conspiracy to commit mail fraud by defrauding the Internal Revenue Service. This last thrust is sometimes referred to as the *Klein* theory of mail fraud. The *Klein* theory was also used as a basis for six of the seven substantive mail fraud counts. *United States v. Klein*, 247 F.2d 908 (2d Cir.1957), *cert denied*, 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed. 2d 354 (1958).

Further, the remaining substantive mail fraud count was supported by the first three theories utilized in the conspiracy count. Another distinction in the substantive counts was the type of mailing addressed in each particular count. The six *Klein* theory counts involved the mailing of a state or federal tax return while the remaining substantive count involved the

mailing of a $50,000 check for payment of certain insurance commissions. As mentioned above, the six *Klein* counts were dismissed for failure to allege that the particular tax returns were false. Consequently, only the conspiracy count and the remaining substantive count remained for consideration by the jury.

Believing that the second mail fraud theory was subsumed in the first theory, the trial court's instructions to the jury quoted the language of the indictment on three theories: the *intangible rights* theory of mail fraud, the *traditional* theory, and the *Klein* theory for each of the two remaining counts. However, the *Klein* theory was not a part of the substantive mail fraud count and the government conceded that it was error to include this theory in the substantive count.[2] *McNally*, 483 U.S. at —, n. 4, 107 S.Ct. at 2878 n. 4, 97 L.Ed.2d at 299 n. 4.

In their motions to dismiss, the defendants state that the trial court did not instruct upon the *traditional* theory and that the government has conceded that the trial court acquitted the defendants upon the *Klein* theory. Although the defendants are technically incorrect in their assertions and the trial court did quote the language of the indictment setting forth these two theories, this Court believes that the only real theory asserted was the *intangible rights* theory. The instructions do not contain the development of the *traditional* and *Klein* theories as set forth in the government briefs written in support of the motion for retrial.

In support of the *traditional* theory of mail fraud, the government now asserts at

---

**2.** [T]he Indictment charges in part that the defendants devised a scheme artifice to:
(a)(1) defraud the citizens of the Commonwealth of Kentucky and its governmental departments, agencies, officials, and employees of their right to have the Commonwealth's business and its affairs conducted honestly, impartially, free from corruption, bias, dishonesty, deceit, official misconduct, and fraud; and,
(2) obtain, (directly or indirectly) money and other things of value, by means of false and fraudulent pretenses, representations, and promises, and the concealment of facts.

. . . . .

(b) Defraud the United States by impeding, impairing, and obstructing and defeating the lawful governmental functions of the Internal Revenue Service of the Treasury Department of the United States of America in the ascertainment, computation assessment, and collection of federal taxes.
(Record, Docket Entry no. 187, Transcript of Instructions & Verdict, pp. 27-16 thru 27-17 & 27-24 thru 27-25).

least two additional theories that were not developed in the jury instructions. First, the government asserts that because of false representations made to Wombell Insurance Agency, the defendants obtained money that would not have been paid had the sham status of Seton been revealed. At the time the commissions were paid, a Kentucky statute prohibited the payment of commissions to any person not licensed as an agent or solicitor. KRS 304.9–420 (repealed 1984). Second, the government now states that the defendants violated their fiduciary duty to the Commonwealth by concealing the true ownership of Seton by Hunt and Gray. *Cf. United States v. Runnels*, 833 F.2d 1183 (6th Cir.1987), *vacated to rehear en banc*, 842 F.2d 909 (6th Cir.1987).

As support for the position that these theories and the *Klein* theory were included in the instructions, the government refers to selected portions of the charge. In addition to the quotation from the indictment, the government relies upon a portion of the conspiracy instruction describing the charge of a "secret agreement" between Gray and McNally and the setting up of the Seton Corporation "for the purpose of concealing and disguising" the receipt of commissions. (Record, Docket Entry no. 187, Transcript of Instructions & Verdict, p. 27–18). The Court notes that this passage makes no reference to concealment from Wombell or violation of fiduciary duty. Moreover, this passage supports the *intangible rights* theory of a right to have the Commonwealth's affairs conducted free from "dishonesty, deceit, ... and fraud." (Indictment, p. 4).

The government also cites the inclusion of Instruction 14 which deals with a defense to the *Klein* theory of mail fraud. (Instructions, p. 27–23). This instruction was submitted by the defendants and states the defense of good faith reliance upon the advice of accountants in preparation of tax returns. However, this instruction does not explain the *Klein* theory to the jury or make any reference to a determination that the returns filed were false or fraudulent.

Finally, the government relies upon the inclusion of the trial court's instruction that the jury must reach a unanimous verdict on at least one of the two objects set out in the indictment.

> This means that you must all agree unanimously on which object or objects charged was an agreed purpose of the conspiracy.... ... If you find that the conspiracy sought to achieve either of the two objects set out in the Indictment, in order to convict on that count you also must find that one of the conspirators committed at least one of the overt acts charged in the Indictment that was in furtherance of that object of the conspiracy to which you find the conspirators agreed.

(Instructions, p. 27–19). Instead of supporting the government's position, this instruction only points out the problems caused by the inclusion of three mail fraud theories in a single count of the indictment. Although the government asserts that at least three theories of mail fraud were set forth in the indictment, this instruction only refers to "two objects" set out in the indictment. Confusion has been caused by the labeling of the theories set out in the indictment as (a)(1)(2)(3) and (b). (Indictment, p. 3–5). At best, this instruction indicates that the *traditional* theory of mail fraud had no distinction apart from the *intangible rights* theory listed as (a)(1) & (2) in the indictment. Further, this instruction did not require the jury to find that the defendants committed overt acts in furtherance of *both* of the objects. If the government had requested a proposed instruction requiring the jury to find that the defendants furthered both objects, then there would be no question that the jury would have considered the *Klein* theory.

### CLOSING ARGUMENT

An examination of the government's closing argument also provides support for the defendants' claim that the *traditional* and *Klein* theories of mail fraud were not effectively presented to the jury. The Court observes that the government's closing lasted for over an hour and covered over eighty pages of the trial transcript.

At several points in his closing argument, the government's counsel stresses that *the theory* of the government is the *intangible rights* theory, the right to honest and impartial government.

... Now, in this kind of mail fraud case where the rights of the citizens to honest government has been deprived, the United States does not have to prove an actual dollar loss, a financial loss to the state. What the United States must prove is that the State of Kentucky was deprived of its right to have its public officials carry out their official duties honestly and impartially.

(Transcript of Closing Argument, Record, Docket Entry No. 186, p. 26–10).[3]

While the *intangible rights* theory is extensively argued, little reference is made to the other theories. The only direct reference to the *traditional* theory found by this court is a single sentence which states that "the Judge will instruct you that the mail fraud statute can be violated when people develop a scheme to deprive money or other tangible property—in this case money—when they devise a scheme to obtain money." *Id.* at 26–19. The Court cannot find any reference to *false representations made to Wombell* or any explanation as to *whose property was fraudulently obtained.* Under the Supreme Court's interpretation of the mail fraud statute, even a *traditional* claim of mail fraud must be supported by proof of a loss of tangible property. *McNally v. United States,* 483 U.S. 350, ——, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292, 302 (1987).

Although the government's counsel referred to the *Klein* theory more often than the *traditional* theory, this Court has found only three references to the tax conspiracy. In the first reference, the government quoted the language of the indictment and went into a short explanation of the facts. (Transcript of Closing Argument, Record, Docket Entry No. 186, p. 26–24). The government explained that Seton was in a lower tax bracket than the defendant Hunt and that the creation of Seton was advantageous for Hunt. How-

ever, no direct reference was made to the fact that Seton's return was false at this point. In the second reference, the government does refer to an improper deduction for a $38,000 payment to Hunt's son and how the IRS was impeded and impaired by being unable to determine who specifically earned the commissions paid to Seton. *Id.* at 26–62 thru 26–63. In the final reference to the *Klein* theory, the government attempted to rebut the defense of good faith reliance upon the advice of accountants. (Transcript of Government's Rebuttal, Record, Docket Entry No. 128, pp. 4–5). While these last two references may have implied that the jury must find that the tax returns were false or fraudulent, the government did not state this as a direct requirement and the instructions contained no reference in this regard.

In any event, this court finds a statement made by the government's counsel in one of his final sentences to the jury most illuminating. Often, counsel restate their most important argument or the central issue of a case during the last few seconds of the closing argument. In these closing seconds, government's counsel stated that

[n]ow ladies and gentlemen of the jury, the right that has been violated here— the gravamen, the *center* of the government's case, is that public officials are entitled ... the public is entitled, I should say, to have its public officials make their decisions honestly and fairly ... and to make the decisions that affected the state honestly and fairly and impartially.

*Id.* at 12 (emphasis added). By the closing argument presented to the jury and the trial court's instructions, we must conclude that the government did not truly pursue the *traditional* and *Klein* theories of mail fraud.

## APPEAL HISTORY

After the trial court dismissed six of the seven substantive counts, the government filed a notice of appeal and moved to stay the trial on the remaining counts. The motion to stay was overruled on January

---

**3.** *See also id.* at pp. 26–10 thru 26–11, 26–14, 26–16 & 26–18.

12, 1984. After the guilty verdicts were returned on March 6, 1984, the defendants filed a separate appeal with the Sixth Circuit Court of Appeals. The Sixth Circuit rendered a per curiam decision on May 12, 1986 with a separate concurrence and dissent by Senior Judge Neese. *United States v. Gray,* 790 F.2d 1290 (6th Cir. 1986).

Although the Sixth Circuit set out a complete statement of the mail fraud theories listed in Count I of the indictment, the court did not mention the government's *traditional* and *Klein* theories of mail fraud. *Id.* at 1293–94. In fact, the court made no effort to distinguish any theory other than the *intangible rights* theory. "As outlined in Count one of the indictment, Gray and McNally were charged with conspiring to commit acts of mail fraud the object of which was to deny the citizens of Kentucky certain 'intangible rights,'...." *Id.* at 1294. The court extensively discussed the *intangible rights* theory and held that the theory was adequately supported by a long line of Court of Appeals decisions. *Id.* While the defendants also requested that the court address the sufficiency of the evidence on the *Klein* theory of mail fraud, the court refused to address this issue since it found that the *intangible rights* theory had been demonstrated beyond a reasonable doubt. *Id.* at 1296 n. 2.

The Sixth Circuit also addressed the government's appeal of the dismissal of the six substantive *Klein* theory counts. In each of the six counts, the government attempted to assert criminal liability for the mailing of different tax returns. However, tax returns are required by law to be mailed and do not in themselves set forth a scheme to defraud under the mail fraud statute. *Id.* at 1298. Because the indictment failed to charge that the returns were false or fraudulent, the indictment failed to set forth one of the essential elements of

mail fraud and the dismissal was affirmed. *Id.* Although the conspiracy count did allege that the returns were false, the government failed to expressly incorporate this portion of the conspiracy count in the substantive counts.[4]

Next, the defendants appealed the decision of the Sixth Circuit to the Supreme Court. The government did not appeal the dismissal of the six substantive counts. *McNally v. United States,* 483 U.S. 350, — n. 2, 107 S.Ct. 2875, 2878 n. 2, 97 L.Ed.2d 292, 298 n. 2 (1987). In a majority opinion written by Justice White,[5] the Supreme Court closely examined the government's theories of mail fraud and the expression of these theories in the jury instructions. *Id.,* 483 U.S. at — – —, 107 S.Ct. at 2878–79, 97 L.Ed.2d at 298–99. After an extensive discussion of the *intangible rights* theory of mail fraud and the legislative history of the mail fraud statute, the Court concluded that "[r]ather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights. If Congress desires to go further, it must speak more clearly than it has." *Id.,* 483 U.S. at —, 107 S.Ct. at 2881, 97 L.Ed.2d at 302.

Further, the Supreme Court addressed the manner in which the mail fraud counts were presented to the jury.

> We note that as the action comes to us, there was no charge and the jury was not required to find that the Commonwealth itself was defrauded of any money or property. It was not charged that in the absence of the alleged scheme the Commonwealth would have paid a lower premium or secured better insurance. Hunt and Gray received part of the commissions but those commissions were not

---

4. In a separate dissenting opinion, Senior Judge Neese disagreed with the dismissal of the six substantive counts and stated that the falsity of the tax returns should be a matter of proof and not of pleading. *Gray,* 790 F.2d at 1299 (Neese, Senior J., dissenting).

5. Justice White was joined in his opinion by Chief Justice Rehnquist and Justices Brennan, Marshall, Blackmun, Powell, and Scalia. Justice Stevens wrote a dissenting opinion joined in part by Justice O'Connor.

the Commonwealth's money. Nor was the jury charged that to convict it must find that the Commonwealth was deprived of control over how its money was spent. Indeed, the premium for insurance would have been paid to some agency, and what Hunt and Gray did was to assert control that the Commonwealth might not otherwise have made over the commissions paid by the insurance company to its agent.

*Id.*, 483 U.S. at ——–——, 107 S.Ct. at 2882, 97 L.Ed.2d at 302–03. In a footnote, the Court also noted that the jury was not charged "that requiring the Wombell agency to share commissions violated state law." *Id.*, 483 U.S. at —— n. 9, 107 S.Ct. at 2882 n. 9, 97 L.Ed.2d at 303 n. 9. This fact weighs against the government's assertion that the *traditional* theory was included in the jury instructions.

Finally, the Supreme Court addressed the government's alternative argument that the convictions should be affirmed because of the jury's finding of mail fraud on the *traditional* theory.

Although the Government now relies in part on the assertion that the petitioners obtained property by means of false representations to Wombell, Brief for United States 20–21, n. 17, there was *nothing* in the jury charge that required such a finding. We hold, therefore, that the jury instruction on the substantive mail fraud count permitted a conviction for conduct not within the reach of § 1341.

The government concedes that if petitioners' substantive mail fraud convictions are reversed their conspiracy convictions should also be reversed. Id., at 36, n. 28.

The judgment of the Court of Appeals is reversed and the case remanded for proceedings consistent with this opinion.

*Id.*, 483 U.S. at ——, 107 S.Ct. at 2882, 97 L.Ed.2d at 303 (emphasis added).

In its brief to the Supreme Court, the government devoted a significant amount of time to the argument that the jury found the defendants guilty of the *traditional* theory of mail fraud and that the

*intangible rights* theory need not be reached. (Brief of United States, pp. 17–22). The government also argued that this action should be remanded to the Court of Appeals for a determination of the sufficiency of the evidence on the *Klein* theory under the conspiracy count. *Id.* at 36. However, the government conceded that the conspiracy count should be reversed if the substantive mail fraud conviction should be reversed. "Gray notes ... that, if the Court reverses petitioners' convictions on the mail fraud count, it follows that the Court should reverse the conspiracy convictions as well. This is correct. *Since the jury almost certainly concluded that petitioners conspired to violate the mail fraud statute,* petitioners' conspiracy convictions cannot stand if the allegation that their acts violated the mail fraud statute is legally defective. *Stromberg v. California,* 283 U.S. 359, 367–368 [51 S.Ct. 532, 535, 75 L.Ed. 1117] (1931)." *Id.* at 36 n. 28. (emphasis added).

It is the opinion of this court that this emphasized phrase is a concession by the government that the *Klein* theory under the conspiracy count and the *traditional* theory under the substantive count were not truly considered by the jury and that the *intangible rights* theory was the primary theory considered by the jury. The government was inconsistent in arguing that the conviction on the substantive count should be upheld on the *traditional* theory while conceding that the conspiracy count would fail even if the *intangible rights* theory of mail fraud should be rejected. Although the government's position is supported by the *Stromberg* case when a Court is unable to determine the particular object of a conspiracy because of a general verdict, *Stromberg,* 283 U.S. at 367, 51 S.Ct. at 535, this statement is added support for the determination that the *intangible rights* theory was the primary and only real theory presented to the jury.

## DISCUSSION

The defendants have stated at least two grounds in support of their motions to dismiss: insufficient evidence on the remain-

ing theories and double jeopardy. This court is hesitant to rule upon the sufficiency of evidence claim because of the refusal of both the Court of Appeals and the Supreme Court to address this issue. In essence, the defendants are asking this court to give appellate review to the decision of the trial court finding that the evidence was sufficient on these issues. Because of the lack of any specific direction from the Supreme Court or the Court of Appeals on the issue of retrial, this court shall reserve the sufficiency of the evidence question for resolution by an appellate court should this Court's order be appealed. In any event, this court will address the double jeopardy issue which is appropriately before us and is dispositive of the motions to dismiss and the motion for retrial.

The most convincing double jeopardy argument of the defendants involves the recent Sixth Circuit decision of *Saylor v. Cornelius*, 845 F.2d 1401 (6th Cir.1988). In *Saylor*, the defendant was indicted on three theories of murder in separate counts, i.e., liability as a principal, an accomplice, and as a conspirator. At trial, considerable evidence was introduced on the accomplice theory but there was a lack of evidence on the principal and conspirator theories. The trial judge instructed the jury on only the murder and conspiracy theories and no instruction was given on the accomplice theory. The prosecution did not object to the instructions. *Id.* at 1402. On appeal, the state appellate court reversed the conviction and remanded the case for retrial on the accomplice theory because the instructional error only was involved. *Id.* at 1402. However, upon appeal of a later habeas petition, the Sixth Circuit held that the retrial was barred by the double jeopardy clause of the fifth amendment. *Id.* at 1408–09.

The opinion contains an extensive examination of the principles and purposes underlying the double jeopardy clause. Once jeopardy has attached a defendant may not be retried upon the occurrence of a mistrial not based on "manifest necessity", an acquittal of the charge, or upon a reversal based upon insufficient evidence. *Id.* at 1405. However, in most cases where the defendant is found guilty and the conviction is reversed for an instructional error, the defendant may be retried because in such situations the guilty verdict indicates that there was sufficient evidence to convict on the offense charged. *Id.* at 1404.

The failure of the jury to convict Saylor of accomplice liability was not the result of a factual error in the instructions, but in the failure of the prosecution to request an instruction on the accomplice theory. Further, the court explained that:

[a]lthough there is no evidence that the prosecutor acted deliberately, permitting a retrial in this case or in any similar case would be fraught with the possibility of 'manipulation. *A prosecutor could indict on several counts or theories, present evidence on each one of them, and then go to the jury only on selected ones, in effect holding the others in reserve for a subsequent or improved effort.*

*Id.* at 1408 (emphasis added). The court analogized the situation in *Saylor* to a case reversed for prosecutorial misconduct which effectively terminates any retrial because the jury could have reached a decision had it not been for the misconduct. Consequently, the court found that

the Double Jeopardy Clause forbids a second trial ... because such a trial would be vexatious, regardless of the jury's deliberation on the theory charged to it. It would be vexatious because the defendant underwent the jeopardy of a full trial, ... and the trial failed to terminate in a verdict for reasons that cannot fairly be charged to the defendant.

*Id.*

Similarly, we are convinced that the government submitted only the *intangible rights* theory to the jury in the present action and that the liability of the defendants on the *traditional* and *Klein* theories terminated when the government failed to effectively pursue these theories with the jury. The government could have pursued these theories in separate counts in drafting the indictment or requested that special interrogatories be submitted to the

jury on each theory. However, the government did not pursue these methods and included all theories in each count.

The defendants in this action underwent a five-week trial and were forced to present evidence rebutting each theory. During closing arguments, the government revealed that the "center" of its case was the *intangible rights* theory and this theory was extensively examined in the instructions. The other theories were given little attention in the government's argument and the instructions.

The government offers at least three arguments in opposition to the application of the *Saylor* case. First, the government contends that the defendants have waived this argument because it was not brought up on appeal. This argument is not convincing because the *intangible rights* theory was presented to the jury and was still viable until it was rejected by the Supreme Court. Accordingly, the defendants had no double jeopardy defense *until* the decision of the Supreme Court was announced and no waiver could have occurred sooner.

Second, the government asserts that the *Saylor* case only applies to theories set forth in separate counts, but we see no reason to limit *Saylor* to such situations. In fact, the court specifically referred to "several counts or *theories*" and the reasoning behind the decision is applicable to this action. *Id.* at 1408.

Third, the government attempts to distinguish the facts in the present action by stating that the *traditional* and *Klein* theories were presented to the jury. For the reasons set forth above, this Court believes that these theories were not truly presented to the jury in the government's closing argument or in the instructions.

On the other hand, if this action had resulted in a shorter trial and the government's closing had not been as extensive, this Court would not be willing to state that the government failed to submit the alternative theories to the jury. The special facts of this case mitigate in favor of a determination that these theories were not truly submitted even though the instructions technically mentioned the theories by quoting the portions of the indictment that contained these theories. A thirty-nine page indictment was returned against the defendants. Over sixty witnesses were called by the prosecution, and the trial lasted for over five weeks. If the government had really been serious as to establishing liability on each mail fraud theory, they could have chosen to do so. Instead, the government abandoned the other theories and focused the attention of the jury, the trial court, and the appellate courts upon the *intangible rights* theory.

The cases that apply the double jeopardy clause limit both sides to *one* fair trial. *Cf. id.* at 1407. If a defect in a trial is caused by a procedural error or other error that cannot be fairly imputed to the prosecution, then the case can be retried because the government did not have a fair trial. On the other hand, if the error is caused by prosecutorial misconduct or the prosecution's failure to present a particular theory to the jury, the government should not be given a second bite at the apple.

The decision to grant the defendants' motions to dismiss on grounds of double jeopardy and to deny the government's motion for retrial are also supported by the Supreme Court's order of reversal and the Sixth Circuit's mandate to this Court. The Supreme Court stated that the "prosecution's principal theory of the case" was the *intangible rights* theory and totally rejected this theory and reversed the convictions without any directions as to a possible retrial. Although the government specifically requested that the issue of the sufficiency of the evidence on the *Klein* theory be remanded to the Court of Appeals, no such directions were given. The fact is that this action was "remanded for proceedings consistent with this *opinion.*" *Id.* 483 U.S. at ——, 107 S.Ct. at 2882, 97 L.Ed.2d at 303 (emphasis added).

A retrial of this action would be inconsistent with the specific directions of the Supreme Court because of the repudiation of the only theory truly presented to the jury. Apparently, the Sixth Circuit did not interpret the Supreme Court's directions as an order to proceed on the remaining theo-

ries in the indictment. The issue of the sufficiency of the evidence on the *Klein* theory could have been addressed by the Sixth Circuit if it believed that the remaining claims were still viable and the case was remanded back to this Court for "proceedings consistent with the Supreme Court's disposition." (Record, Docket Entry No. 191).

It should be remembered that the government argued that even if the "good government" concept should be rejected, the conviction would stand on the remaining theories. This argument did not prevail. We believe that had the Supreme Court had a retrial in mind, or the Court of Appeals for that matter, they would have specifically directed another trial.

In conclusion, although the *traditional* and *Klein* theories were technically presented to the jury by the trial court's quotation of a portion of the indictment, these theories were in reality not presented to the jury and a retrial would place the defendants again in jeopardy and this is expressly prohibited by the Constitution.