717 F.Supp. 689 (1989)
UNITED STATES of America, Plaintiff,
v.
Eugene SLAY, Leroy Tyus and James Cullen, Defendants.
No. 86-67CR(1).
United States District Court, E.D. Missouri, E.D.
July 6, 1989.
*690 David Rosen, U.S. Attorney's Office, St. Louis, Mo., for plaintiff.
Jim Shoemake, St. Louis, Mo., Thomas Utterback, Washington, Mo., and Barry Short, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
On June 2, 1987, defendants James Cullen, Eugene Slay and Leroy Tyus were convicted by a jury of violating the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, in connection with their attempt to obtain a cable television franchise from the City of St. Louis. Following defendants' convictions, but prior to their sentencing, the United States Supreme Court decided McNally v. United States, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which significantly limited the scope of the mail and wire fraud statutes. In light of McNally, this Court set aside the jury verdicts against defendants and ordered a new trial. This matter is now before the Court on defendants' motions to dismiss the indictment and motions to inspect grand jury instructions and minutes.[1]

I. Procedural History.

The indictment before this Court charged defendants, along with Tom Zych,[2] with intent "to devise a scheme or artifice to defraud:" (1) the City and its citizens of "their right to the conscientious, loyal, faithful, disinterested and unbiased services" of City officials and their right to have the duties of those officials "performed free from corruption, extortion, bribery, partiality, wilful omission, dishonesty, official misconduct, conflict of interest and fraud;" (2) the City and its officials of their "right to be aware of all material and relevant facts" concerning the ownership of Archway Cablevision of St. Louis, Inc., the corporation seeking the cable television franchise; and (3) a scheme "to obtain money and property, specifically a cable television franchise from the City of St. Louis." Indictment ¶ 11.[3] The jury was instructed that the scheme or artifice to defraud element of mail and wire fraud could be established if the government proved either that the defendants intended to devise a scheme to defraud the City and its citizens of their intangible right to good *691 government or intended to obtain property from the City in the form of the cable television franchise. Instruction Nos. 37, 39, 40, 40-A and 40-B.
Following the jury's verdict, but prior to sentencing, the United States Supreme Court departed from a long line of Court of Appeals decisions by holding that the mail fraud statute does not protect "the intangible right of the citizenry to good government", but is limited to protection of property rights. McNally, 483 U.S. at 356, 360, 107 S.Ct. at 2879, 2881. The Court emphasized that any protection provided to the government under the mail fraud statute is "limited to the [g]overnment's interest as a property holder." Id. at 359 n. 8, 107 S.Ct. at 2881 n. 8.
In response to the McNally decision and defendants' post-trial motions, this Court set aside the jury verdicts against defendants because the Court was unable to determine whether the jury had convicted defendants on the basis of the invalidated good government theory or on a permissible property theory. United States v. Slay, 673 F.Supp. 336, 346-48 (E.D.Mo. 1987). Rather than dismissing the indictment, the Court struck as surplusage the portions of the indictment related to the scheme to defraud the City of St. Louis and its citizens of their right to good government, and ordered a new trial. Id. at 349-51.
The government and defendants appealed the Court's order granting a new trial. On appeal, the Eighth Circuit rejected the government's argument that the convictions should stand despite the McNally decision and affirmed the Court's order. United States v. Slay, 858 F.2d 1310, 1314-17 (8th Cir.1988). The Eighth Circuit dismissed defendants' cross-appeal holding that it lacked jurisdiction to consider defendants' argument that the indictment should be dismissed. Id. at 1313-14.

II. Factual Background.

In December, 1981, the Board of Aldermen of the City of St. Louis enacted the St. Louis Cable Television Ordinance, Ordinance No. 58462. The ordinance authorized the Board of Aldermen to select the persons or corporations who would be awarded franchises to construct and operate cable television systems within the City of St. Louis. Ordinance No. 58462, Preamble. The ordinance did not, however, grant any authority to actually operate a cable television franchise. Id. at § 29. To award a specific franchise to a qualified applicant, the City would have to pass a separate ordinance. Id.
The ordinance required all applicants for the cable television franchise to provide the names of the officers, directors and major stockholders of the applicant corporations. Id. at § 29(1)(a). Other than a non-refundable application fee, the City had no right to remuneration until a franchise was actually awarded to a particular entity. Id. at §§ 17, 29(1).
According to the indictment, defendants submitted an application for the St. Louis cable television franchise in June, 1983, on behalf of Archway Cablevision. The indictment charges that the application falsely represented the ownership interest in Archway Cablevision and concealed the interest of defendant Slay and co-conspirator Sorkis Webbe, Sr. (who died before the indictment). Indictment ¶ 11. Defendant Cullen allegedly participated in the scheme to obtain the cable television franchise by serving as an attorney for Archway Cablevision and defendant Tyus allegedly agreed to assist Slay in obtaining the franchise by exerting his political influence over members of the Board of Aldermen. Indictment ¶ 11. In December, 1983, defendants withdrew the Archway Cablevision bid for the franchise. Ultimately, the franchise was awarded to other applicants.

III. Motions to Dismiss the Indictment.

Defendants raise three arguments in support of their motions to dismiss the indictment. First, defendants argue that the indictment fails to state an offense against defendants because the City was not defrauded of any property protected by the mail and wire fraud statutes. Second, defendants argue that a retrial is barred by the double jeopardy clause. Finally, defendants *692 argue that proceeding to trial on the amended indictment, without the good government theory, would violate their fifth amendment right to be tried only on an indictment returned by a grand jury.

A. Property Interest Argument.
In the indictment, the government advanced three theories in support of the mail and wire fraud charges. The first theory, based upon a scheme to defraud the City and its citizens of their right to loyal and faithful services of government officials, was clearly repudiated by the McNally decision. McNally, 483 U.S. at 356, 107 S.Ct. at 2879. The second theory, the City's interest in accurate information regarding the actual owners of Archway Cablevision does not rise to a property interest within the meaning of McNally. Although the Supreme Court in Carpenter v. United States, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), held that certain intangible property rights are within the scope of the mail and wire fraud statutes, the right to accurate ownership information is distinguishable from the right to the confidential business information involved in Carpenter, which has long been recognized as a cognizable property interest. Id. 108 S.Ct. at 320. The Eighth Circuit, on appeal, explicitly rejected the government's argument that defendants' failure to provide the City of St. Louis with accurate information regarding ownership of Archway Cablevision deprived the City of any property interest protected by the mail and wire fraud statutes. Slay, 858 F.2d at 1316-17. As the Eighth Circuit noted, "[w]ithholding valuable information from the City is not the same thing as depriving the City of its property and only the latter conduct violates the mail fraud statutes." Id. at 1316.
The third theory advanced by the government was that defendants intended to devise a scheme "to obtain money and property, specifically a cable television franchise from the City of St. Louis" by false pretenses. Indictment ¶ 11. Defendants argue that the St. Louis cable television franchise is not "property" of the City within the meaning of the mail and wire fraud statutes as interpreted by McNally. Defendants contend that the franchise is property only to the franchisee once it is awarded, and that the City's interest in the franchise is purely regulatory. Defendants rely upon a series of post-McNally decisions which hold that the government's interest in licenses or permits is not property protected by the mail and wire fraud statutes. See United States v. Murphy, 836 F.2d 248 (6th Cir.), cert. denied, ___ U.S. ___, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988); United States v. Ferrara, 701 F.Supp. 39, 42 (E.D.N.Y.) aff'd, 868 F.2d 1268 (2d Cir. 1988); United States v. Dadanian, 856 F.2d 1391 (9th Cir.1988).
In Murphy, the Sixth Circuit held that the State of Tennessee was not deprived of property, within the meaning of McNally, when the defendant submitted false information to obtain a bingo permit. Id. at 254. The Court reasoned that the permit was not property to the state before it was issued, and once it was issued, it became property to the holder, not the state. Id. at 253-54.
The Eastern District of New York reached a similar conclusion with respect to a state's interest in a medical license in Ferrara. The court observed that while a medical license is a "significant property interest of the licensed physician", the state licensing authority has no cognizable property interest in the license and the government's interest is merely regulatory. 701 F.Supp. at 42.
In Dadanian, the Ninth Circuit found that the defendants' scheme to obtain a gambling license, without disclosing the secret interest of others in a gambling club, did not deprive the city of any property interest, and, thus, held that McNally required reversal of the defendants' mail fraud convictions. 856 F.2d at 1392.
Defendants argue that the City's interest in the cable television franchise, like the government's interest in the licenses and permits involved in the Murphy, Ferrara and Dadanian cases, is purely regulatory rather than proprietary in nature.
*693 The government contends that the present case is distinguishable from the Murphy, Ferrara and Dadanian cases, which involve "mere issuance of licenses," because the St. Louis Cable Television Ordinance contemplated an ongoing contractual relationship between the City and the defendants. United States' Opposition to Defendant Slay's Motion to Dismiss the Indictment, at 3-4.
The Court agrees that a license differs from a franchise in that a license does not create contractual or property rights, 9 E. McQuillin, Municipal Corporations § 26.14 (3d ed. 1986); 53 C.J.S. Licenses § 3 (1987); whereas a franchise, once granted by the government for valuable consideration and accepted by the individual or corporation, becomes property in the form of a binding contract between the government and the franchisee. 3 C. Antieau, Municipal Corporation Law § 29.00 at 29-5, 29-6 (1989); 12 E. McQuillin, Municipal Corporations § 34.03 at 11 (3d ed. 1986); see also State ex inf. George Peach v. Melhar Corp., 650 S.W.2d 633, 636 (Mo.App.1983). However, "until an ordinance granting a franchise is accepted, the franchise lacks the essential elements of a contract ... [and] is a mere proposition." 12 E. McQuillin, § 34.06 at 23. The government fails to explain how mere contemplation of an ongoing contractual relationship rises to a property right protected by the mail and wire fraud statutes. To support its argument that defendants' scheme deprived the City of cognizable property rights, the government primarily relies upon two mail fraud cases. See United States v. Perholtz, 842 F.2d 343 (D.C.Cir.), cert. denied, ___ U.S. ___, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); United States v. Rico Industries, Inc., 854 F.2d 710 (5th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1529, 103 L.Ed.2d 834 (1989).
The government maintains that the D.C. Circuit in Perholtz recognized that the government's interest in "the inducement phase of [a] contractual relationship" is a property interest within the meaning of McNally. United States' Opposition to Defendant Slay's Motion to Dismiss the Indictment, at 5. However, a close examination of the facts and holdings of the Perholtz case reveals that the government's property interest was based upon confidential information and economic loss. The Perholtz case involved two schemes, one against the United States Postal Service and the other against the Small Business Administration (SBA). In the scheme against the Postal Service, the defendants procured a data processing contract through the misuse of confidential information obtained by one of the defendants when he was employed by the Postal Service. 842 F.2d at 366. Therefore, the Postal Service was deprived of their intangible property interest in confidential business information. Id. at 367. The defendants' scheme against the SBA caused the SBA to pay a higher price for the data processing system. Defendants received kickbacks from the subcontractors who were chosen to perform the services; these costs were in turn passed on to the SBA by the prime contractor. Therefore, the SBA suffered tangible economic loss in the form of a higher purchase price. The court, in fact, noted that if the cost of the contract had not been affected by the defendants' actions, then the case would be directly analogous to McNally and defendants' convictions would have to be overturned. United States v. Perholtz, 836 F.2d 554, 558 (D.C.Cir.1988) (earlier decision on defendants' motions for release pending appeal).
The present case, unlike the Perholtz case, did not involve deprivation of any confidential business information or tangible economic loss. Because the franchise had not yet been granted to Archway Cablevision, defendants' scheme could not have deprived the City of any contractual or property right, which would only arise after the franchise was awarded. Other than deprivation of the City's interest in the franchise, the only loss specifically identified by the government concerned concealment of the true owners of Archway Cablevision, which the Court has already determined does not rise to a cognizable property interest.
*694 In Rico Industries, Inc., defendant negotiated a natural gas purchase contract on behalf of his employer, a public utility company, and concealed a 25% kickback received from the gas supplier. 854 F.2d at 711. Defendant argued that the utility did not suffer any loss of property rights because the utility received the maximum price and profit allowable under state law, and that any increased cost arising from the scheme was passed on to the consumers. Id. at 713. The court rejected defendant's argument and held that direct monetary loss was not required. Id. at 714. The court found that the fraud prevented a more favorable contract and deprived the utility of its property right to control its money. Id. If not for the scheme, the utility could have sold gas to its customers at a lower rate which would thereby increase the utility's good will and enable it to provide quality service at the lowest possible price. Id.
In the present case, unlike the Rico Industries, Inc. case, the City was not deprived of any right to control its money or property and there is no indication that cable television customers would have had to pay a higher price for cable television services provided by Archway Cablevision than for services provided by another company. In Rico Industries, Inc., the utility was deprived of its right to control its money because it paid the gas supplier more than was necessary because of the kickback scheme. The transaction between the City and Archway Cablevision, on the other hand, did not and would not require the City to part with any of its money.
To bootstrap its argument that defendants' scheme would defraud the City of a cognizable property interest, the government points out that the Supreme Court in McNally recognized that "a scheme which threatened [the] government's `control' over property or its right to a `better' position as a property-holder" falls within the scope of the mail fraud statute. United States' Opposition to Defendant Slay's Motion to Dismiss the Indictment, at 4-5 (citing McNally, 483 U.S. at 360, 107 S.Ct. at 2881). The government contends that defendants' scheme threatened the City's ultimate control over the franchise and its ability to obtain a better franchise because the City would not be able to monitor the true owners of the franchise. By this argument, the government seeks to avoid the key issue of whether defendants' scheme would deprive the City of any property interest protected by the mail and wire fraud statutes. The argument is fundamentally flawed because in order for loss of control or loss of opportunity to obtain a better franchise to constitute a deprivation within the meaning of the mail and wire fraud statutes, the scheme must be aimed at defrauding the City of its interests as a property holder. McNally, 483 U.S. at 359 n. 8, 107 S.Ct. at 2881 n. 8. The government has failed to demonstrate how the City's interest in the inducement phase of a contractual relationship rises to a cognizable property right.
The Court recognizes that a scheme or artifice to defraud need not reach fruition and need not actually defraud the intended victim of any money or property. United States v. Dynalectric Co., 859 F.2d 1559, 1576 (11th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989); Ward v. United States, 845 F.2d 1459, 1462 (7th Cir.1988); Schreiber Distributing v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir.1986). However, to find that defendants engaged in a scheme within the reach of the mail and wire fraud statutes, the Court must find that defendants' scheme was intended to harm the City in its property rights or to deprive the City of something of value. See McNally, 483 U.S. at 358, 107 S.Ct. at 2880; United States v. Asher, 854 F.2d 1483, 1494 (3d Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989).
Under the circumstances of this case, the City of St. Louis had no property or contractual rights in the cable television franchise because such rights would only arise after the City granted the franchise for valuable consideration to a particular entity. The St. Louis Cable Television Ordinance did not grant authority to the successful applicant to actually operate a cable *695 television franchise. Ordinance No. 58462, § 29. The City still had to pass a separate ordinance to award the actual franchise. Id. The culmination of the application process would have been to select the entity with whom to negotiate the final franchise. Had defendants' scheme succeeded they would have merely been selected as the corporation who would receive the franchise; the terms of the actual franchise would have to be worked out by the City and Archway Cablevision and a separate ordinance awarding the franchise would have to be passed by the City. Therefore, the Court concludes that the indictment fails to state an offense against defendants because defendants' scheme as set out therein did not and would not defraud the City of any property protected by the mail and wire fraud statutes.

B. Double Jeopardy Argument.
Defendants argue that a second trial is barred by the double jeopardy clause of the fifth amendment because the good government theory predominated throughout the trial with only passing reference to a money and property scheme. Defendants rely upon United States v. Gray, 705 F.Supp. 1224 (E.D.Ky.1988), in which the district court, on remand from the Supreme Court's decision in McNally, concluded that a retrial of the defendants would violate double jeopardy because the prosecution's primary focus in the initial trial was on the good government theory.
In Gray, the district court found that double jeopardy barred retrial of the defendants because the trial defect was not caused by a mere instructional error, which would permit a retrial, but was caused by the prosecutor's failure to present the property theory to the jury, and thus, was more analogous to prosecutorial misconduct. 705 F.Supp. at 1231-32. The court reasoned that the government should not be given "a second bite at the apple" when the defect in the trial was caused by the prosecution. Id. at 1232.
To reach its conclusion, the court thoroughly reviewed the trial proceedings and focused on the government's failure to pursue the property theory in separate counts of the indictment or by special interrogatories to the jury and the government's emphasis on the good government theory during closing argument. Although the court, when instructing the jury, quoted language from the indictment setting forth the scheme to obtain "money or other things of value by means of false and fraudulent pretenses ...", the court found that the instructions only "technically presented" the property theory and, in reality, the only theory presented and developed was the good government theory. Id. at 1233.
In the present case, the government's primary theory of prosecution was the defendants' alleged scheme to defraud the City and its citizens of their right to good government. As in Gray, the indictment commingled the good government theory with the property theory and did not delineate the property theory in a separate count. In the opening statement, the government emphasized defendants' scheme to conceal the identity of the actual owners of Archway Cablevision. Transcript, Vol. I-B, at 26-28, 33. Although the instructions to the jury quoted the portion of the indictment setting forth the three theories in support of the scheme to defraud the City, including the intent to devise the scheme to obtain the cable television franchise, the property theory was only technically mentioned and was not developed. Instruction No. 35. The only other reference in the instructions to the scheme to obtain property referred specifically to fraudulent representations concerning the identity of the owners of Archway Cablevision to obtain the cable television franchise. Instruction No. 40-B. The instructions contained no elaboration of a property theory which would support a mail or wire fraud conviction. During closing argument, the government again highlighted the good government theory of prosecution by describing defendants' scheme as one "designed to deny the people of St. Louis the conscientious, loyal, impartial, unbiased services of the people on the Board of Aldermen." Transcript, Vol. VIII, at 13. The government elaborated on this theory by telling the jury that *696 if they found that defendants were offering stock or property to the Board of Aldermen, then the City was denied the unbiased and loyal services of these officials. Id. at 14. The government also reiterated its position that the City had a right to accurate information concerning ownership of the applicant corporation in determining which party to award the franchise. Id. In passing, the government indicated that "a scheme may also be found to exist when a person uses false or fraudulent representations to obtain money or [a] thing of value from another", but did not explain how the City would be deprived of money or property had defendants' scheme succeeded. Id. at 15.
The Court concludes that a retrial of the present action is barred by the double jeopardy clause. The prosecution focused its case on the good government theory and failed to really develop a property theory at the initial trial. Therefore, this Court, despite the highly dubious intentions of defendants, is constrained to deny the government "a second bite at the apple." Gray, 705 F.Supp. at 1232.

C. Grand Jury Argument.
Defendants request reconsideration of the Court's previous order denying defendants' motions to dismiss the indictment based upon violation of the grand jury clause of the fifth amendment. The Court thoroughly addressed defendants' arguments in its previous opinion. See United States v. Slay, 673 F.Supp. 336, 349-51 (E.D.Mo.1987). Given the Court's previous consideration of defendants' grand jury argument and the Court's present ruling that the indictment must be dismissed because the City lacks a cognizable property interest and double jeopardy bars a retrial of defendants, the Court declines to reconsider defendants' grand jury argument. Defendants' motions to inspect grand jury instructions and minutes are denied as moot.
In summary, the Court concludes that the present indictment against defendants Slay, Tyus and Cullen must be dismissed because 1) it fails to allege a violation of the mail and wire fraud statutes, and 2) retrial of defendants would violate the double jeopardy clause.

JUDGMENT
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendants' motions to dismiss the indictment be and are granted.
IT IS FURTHER ORDERED that defendants' motions to inspect grand jury instructions and minutes be and are denied as moot.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the indictment against defendants Eugene Slay, Leroy Tyus and James Cullen be and is dismissed.
Dated: July 6, 1989.
NOTES
[1] Although each of the defendants filed separate motions, each defendant also adopted the motions filed by his co-defendants, therefore the Court will collectively address the arguments raised by the defendants in their motions.
[2] Tom Zych, President of the Board of Aldermen for the City of St. Louis, was acquitted by the jury on all counts.
[3] Defendants were also charged in a related indictment, the "TCI/Melhar" indictment, No. S1-84-207CR(1), with various federal offenses including attempted extortion and mail and wire fraud violations. The case proceeded to trial on both indictments; defendants were acquitted of all charges contained in the TCI/Melhar indictment.