**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William C. HULS and Marsden W. Miller, Jr., Defendants-Appellants.**

No. 87–3419.

United States Court of Appeals, Fifth Circuit.

March 15, 1988.

Helen Ginger Berrigan, Gravel & Brady, New Orleans, La., Triche, Sternfels & Nail, Risley C. Triche, Napoleonville, La., for Huls.

Thomas B. Rutter, Philadelphia, Pa., John R. Martzell, New Orleans, La., for Miller.

James M. Cole, Dept. of Justice, Washington, D.C., Stanford O. Bardwell, Jr., U.S. Atty., James Stanley Lemelle, R. Raymond Lamonica, Asst. U.S. Attys., Baton Rouge, La., for U.S.

Before VAN GRAAFEILAND,* JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

William C. Huls and Marsden W. Miller, Jr. appeal their convictions for mail fraud and conspiracy to commit mail fraud under

---

11. *See supra* at 1276.

* Circuit Judge of the Second Circuit, sitting by designation.

18 U.S.C. §§ 2, 371, and 1341. The convictions were handed down shortly before the Supreme Court, writing in *McNally v. United States*, made it clear that mail fraud could not be based on a scheme to deprive citizens of their right to honest government. —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Because the indictment and jury instructions in the instant case permitted the jury to convict on this now-invalid theory, we reverse.

### I. *Background*

William C. Huls, a prominent figure in the Louisiana oil industry, was a founder and principal owner of the Exploration Company of Louisiana (XCL), along with Marsden W. Miller, Jr. In March 1984, the Governor of Louisiana, Edwin Edwards, appointed Huls Secretary of the Louisiana Department of Natural Resources. The post carried with it membership on the Louisiana Mineral Board, which awards oil and gas leases on state lands. Huls asked the Louisiana Ethics Commission for an advisory opinion on his ties to XCL, submitting information that the Government characterized at trial as distorted and incomplete. In May 1984, the Commission issued an advisory opinion recommending that Huls be barred from participating in any Mineral Board decisions in which XCL would have a "substantial economic interest." La.Rev.Stat. § 42:1102(21). Huls sold his XCL stock to Miller in June 1984, a transaction that the Government later labeled a sham.

In July 1984, the Louisiana Mineral Board awarded a lease to drill oil and gas wells on state lands to a company called TIPCO. Although the bid was in TIPCO's name, TIPCO and XCL had formed a fifty-fifty partnership to submit it. Huls recommended to the Board that it grant the lease, and also successfully argued that TIPCO be relieved of the usual well depth and letter of credit requirements.

At trial the Government presented evidence that throughout this period, Huls continued to collect on an overriding royalty and on working interests in several XCL leases. The Government also showed evidence that XCL had given Huls a Mercedes, paid health insurance premiums, and paid for several airplane trips. Huls had allegedly pledged some of his royalty interests as collateral on an XCL note for over $5,000,000, giving him an interest in XCL's continuing viability. The Government also presented evidence that Huls had an agreement to repurchase on demand a large block of the XCL stock he formerly held.

In November 1986, the United States brought charges against Huls and Miller for mail fraud and conspiracy to commit mail fraud. 18 U.S.C. §§ 2, 371, 1341. After a three-week trial, the jury found that Huls' sale of his XCL stock had not been a sham. However, the jury convicted Huls and Miller on the charges alleging that they had deceived the Louisiana Mineral Board and the Ethics Commission about the conflicts of interest stemming from Huls' continuing ties with XCL. Huls and Miller were sentenced on June 5, 1987. On June 24, 1987, the Supreme Court decided *McNally*. 107 S.Ct. 2875. Huls and Miller brought this appeal.

### II. *Discussion*

Huls and Miller argue that the indictment and instructions failed to set forth the elements of mail fraud correctly; that the district court erred in excluding evidence showing that the leases were advantageous to the state; that the jury should not have been allowed to find that Huls concealed a "substantial economic interest" in XCL; and that the district court gave an erroneous *Allen* charge to the jury. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Because we hold that the convictions must be reversed on the first ground, we will not discuss the remaining grounds.

In *McNally*, the Supreme Court invalidated the theory, held by this circuit and others, that the "scheme or artifice to defraud" element of mail fraud could be supplied by a scheme threatening "the intangible right of the citizenry to good government." *McNally*, 107 S.Ct. at 2879; *see, e.g., United States v. Bruno*, 809 F.2d 1097, 1105 (5th Cir.), *cert. denied,* —— U.S.

——, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987). The Court examined the legislative history and concluded that Congress enacted the mail fraud statute to protect only property rights, broadly defined. *Id.* 107 S.Ct. at 2879–81. In *Carpenter v. United States,* —— U.S. ——, 108 S.Ct. 316, 320–21, 98 L.Ed.2d 275 (1987) the Court clarified *McNally* by pointing out that property rights can be intangible—like a newspaper's right to exclusive use of the information it uncovers—as well as tangible and that the fraud statutes protect both kinds of property (interpreting an identically worded provision in the wire fraud statute, 18 U.S.C. § 1343). *Carpenter,* however, reiterated that non-property rights are *not* covered by the mail and wire fraud statutes: "The Journal, as Winan's employer, was defrauded of much more than its contractual right to his honest and faithful service, an interest too ethereal in itself to fall within the protection of the mail fraud statute ..." *Id.,* 108 S.Ct. at 320.

Subsequent decisions of this and other circuits have carefully hewed the property-nonproperty line drawn by the Supreme Court. In *United States v. Richerson,* this Court upheld the conviction of an oil company employee who steered business to certain vendors in return for kickbacks. 833 F.2d 1147 (5th Cir.1987). The Court observed that property rights continued to be interpreted broadly and that Richerson had deprived his employer both of the kickbacks (which he had a duty to turn over) and of the fair price the employer could have obtained through honest procurement. *Id.* at 1156–58. The Court noted that this property deprivation was "the overriding and predominent theory of the Government's case." *Id.* at 1157.

In *United States v. Wellman,* the Seventh Circuit affirmed the mail fraud conviction of a defendant who sold chemical transportation tanks by misrepresenting that they met government standards. 830 F.2d 1453 (7th Cir.1987). The court stated that the prosecution met the *McNally* property requirement by charging that the defendant deprived his victim of the tanks or their price. *Id.* at 1463. In *United States v. Herron,* on the other hand, this Court

overturned a conviction based on failing to declare money at an international border, 825 F.2d 50 (5th Cir.1987). The Court noted that the indictment did *not* charge that the defendants evaded taxes, but only that they deprived the United States of information in which the Government had no preexisting property right. 825 F.2d at 56–57. Finally, in *United States v. Fagan,* this Court affirmed the mail fraud conviction of a drilling company employee who awarded boat lease contracts in exchange for kickbacks. 821 F.2d 1002 (5th Cir.1987). As in *Richerson,* the Court held that the faithless employee deprived his employer of the fair lease price that the employer would have been able to negotiate without the kickbacks. *Id.* at 1009, 1010–11 n. 6.

In the instant case, the indictment and the court's instructions to the jury nowhere require the jury to find that Huls and Miller intended to deprive the state of Louisiana of a property right. Indeed, the indictment and instructions are permeated by the pre-*McNally* "right to honest government" theory. Each of the substantive mail fraud counts of the indictment contains the phrase:

> For the purpose of executing and in order to effect the scheme and artifice to defraud the citizens of the State of Louisiana of their right to the honest, faithful, and impartial services of WILLIAM C. HULS, and of the right to have the functions of DNR [the Department of Natural Resources], the Mineral Board, and the Ethics Commission administered honestly, fairly, impartially, free from abuse, free from corruption, free from self-dealing, and with all the information which is material to their business, the defendants [placed an item in the mail] ...

Record, Vol. 1 at 10. The court, in its opening charge to the jury, stated:

> A scheme to defraud need not necessarily contemplate loss of money or property to the victims. Although the government must prove that some actual harm was contemplated by the defendants, a scheme which operates to deprive citizens of intangible rights or interests

is a scheme to defraud. Thus, the mail fraud statute forbids the use of the mails for schemes to defraud citizens of an appointed or elected official's honest and faithful services, of material information relevant to the duties of the public official and the business of the agency, and of the right to have the functions of its public institutions administered honestly, fairly, and impartially.

Record, Vol. 5 at 42–43. In its closing instructions, the court hammered the point home:

A scheme to defraud need not necessarily contemplate loss of money or property to the victims. Although the government must prove that some actual harm was contemplated by the defendants, a scheme which operates to deprive citizens of intangible rights or interests is a scheme to defraud. Thus, the mail fraud statute forbids the use of the mails for schemes to defraud citizens of an appointed or elected official's honest and faithful services, of material information relevant to the duties of the public official and the business of the agency, and of the right to have the functions of its public institutions administered honestly, fairly and impartially.

Record, Vol. 19 at 18–19.

The Government argues that the grand jury and the court's use of the word "material" required the jury to find deprivation of property. The context, however, makes it clear that "material" was used in the sense of "relevant to a decision," and would apply to both property and nonproperty rights. The Government also argues that the jury heard ample evidence that Huls and Miller did deprive the State of a property right—the right to manage its mineral wealth. We express no opinion on this assertion, for it is beside the point at issue before this Court. Even if the jury could have convicted Huls and Miller on the same evidence under a correct view of the elements of the offense, the conviction cannot stand if there is a real possibility that the jury convicted on an *incorrect* view. As the *McNally* court held:

Although the Government now relies in part on the assertion that the petitioners obtained property by means of false representations to Wombwell, ... there was nothing in the jury charge that *required* such a finding. We hold, therefore, that the jury instruction on the substantive mail fraud count *permitted* a conviction for conduct not within the reach of § 1341.

107 S.Ct. at 2882. (emphasis added). The jury in the instant case was told several times that it was not required to find deprivation of a property right to convict. We cannot assume that these repeated instructions had no effect.

In sum, the convictions must be reversed because the indictment and jury instructions did not require the jury to find all the elements of the crime. We decline to reach the other points raised by Huls and Miller. Since reversal is based on defects in the indictment and jury instructions rather than on insufficiency of the evidence, there is no apparent obstacle to retrial, should the Government seek a new indictment. This Court expresses no opinion on the merits of any such case.

REVERSED.