UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos MARCELLO,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles E. ROEMER, II,
Defendant–Appellant.

Nos. 88–3138, 88–3177.

United States Court of Appeals,
Fifth Circuit.

June 23, 1989.

Arthur A. Lemann, III, Lemann, O'Hara & Miles, New Orleans, La., for Carlos Marcello.

Robert J. Boitmann, Albert J. Winters, Jr., Asst. U.S. Attys., New Orleans, La., for U.S. in No. 88–3138.

John R. Martzell, New Orleans, La., for Charles E. Roemer, II.

Robert J. Boitmann, Albert J. Winters, Jr., Asst. U.S. Attys., John Volz, U.S. Atty., New Orleans, La., for U.S. in No. 88–3177.

Before POLITZ, GARWOOD and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of conspiring to violate the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d) (1976), Carlos Marcello and Charles E. Roemer, II petition for relief under 28 U.S.C. § 2255 and by writ of error *coram nobis*,[1] respectively, contending that their convictions should be vacated in light of the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In these consolidated cases the district court denied relief to both petitioners. Concluding that both are entitled to the relief sought, we reverse the district court and vacate the challenged convictions.

### Background

Viewing the evidence in the light most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the following facts set the stage for these proceedings. In 1979, the Federal Bureau of Investigation structured an undercover sting operation designed to investigate the bribing of public officials in connection with the placement of public employee insurance contracts. The Bureau staffed a fictitious insurance agency with two undercover agents and Joseph Hauser, a convicted insurance salesman. Their mission was to make contact with Hauser's former associates in furtherance of the investigation of corrupt activities.

Hauser was instructed to renew an acquaintanceship with Marcello and to seek his assistance in the acquisition of the state's insurance business. Hauser had met Marcello in 1976 while purchasing a Louisiana insurance company. In conformity with these instructions Hauser met with Marcello who agreed to help Hauser obtain state insurance business. The payment of bribes to state and local officials was involved. The plan called for splitting the commissions paid on the insurance premiums between Marcello and Hauser and his undercover FBI associates.

Marcello introduced Hauser and the undercover agents to Roemer who was then the Commissioner of Administration for the State of Louisiana—a position second only to the Governor of Louisiana in power, influence, and prestige. Roemer agreed to use his influence to secure placement through Hauser of some of the state employee insurance business. In return, Roemer was to receive $25,000 in advance and a share of future insurance premium commissions.

In June 1980 a federal grand jury indicted Marcello, Roemer, and three others for conspiracy to violate the RICO Act, 18 U.S.C. § 1962(d), and for a substantive RICO violation, 18 U.S.C. § 1962(c). The pattern of racketeering activity alleged in the indictment included as predicate offenses: (1) state bribery, (2) violation of the interstate travel statute, (3) mail fraud, and (4) wire fraud. In addition, Roemer and Marcello were charged with wire fraud, 18 U.S.C. § 1343, and mail fraud, 18 U.S.C. § 1341, and Marcello was charged with an interstate travel violation, 18 U.S.C. § 1952. After an 18-week trial the jury returned a general verdict convicting Roemer and Marcello on the RICO conspiracy count, but acquitting them on all substantive counts. Roemer was sentenced to three years imprisonment, subsequently reduced to two years, and Marcello was sentenced to seven years imprisonment. Roemer served his sentence and was released; Marcello remains in prison. The sentences were affirmed on appeal, 703 F.2d 805 (5th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 341, 78 L.Ed.2d 309 (1983).

Following the decision of the Supreme Court in *McNally v. United States*, Marcello and Roemer moved for post-conviction relief. The district court denied relief and these appeals followed.

### Analysis

In *McNally* the Court held that a scheme to defraud citizens of their intangible right to honest and impartial government did not

---

1. Marcello invokes 28 U.S.C. § 2255. Having completed his sentence, Roemer cannot satisfy the "in custody" requirement of section 2255. He therefore petitions for relief via a writ of error *coram nobis*, 28 U.S.C. § 1651.

constitute a violation of the mail fraud statute. In recent years the mail fraud and wire fraud statutes have received expansive interpretation and application by several district and circuit courts. A principal emergence was the "intangible rights doctrine," a concept premised on the theory that the citizenry has a right to honest and impartial governance.[2] This concept was frequently the footing in cases involving the corruption of public officials. *McNally* laid the intangible rights doctrine to rest, holding that the mail fraud statute is "limited in scope to the protection of property rights." 483 U.S. at 360, 107 S.Ct. at 2881, 97 L.Ed.2d at 302.

In *McNally*, a public official and a private citizen were convicted of mail fraud for their involvement in a scheme wherein the public official used his influence to channel state insurance business to an agency which then shared the commissions generated with designated agencies, including one in which the defendants had an undisclosed interest. The indictment charged a scheme designed to deprive the citizens of honest government and property or money.[3]

Having concluded that the mail fraud statute did not protect the intangible right of citizens to honest government, the *McNally* Court observed that the jury had not been required to find that McNally had defrauded the Commonwealth of Kentucky of any money or property. The instructions did not charge that a lower premium or better insurance would have been acquired, but for the scheme, or that the Commonwealth was deprived of control over how its money was spent. The Supreme Court concluded that the *McNally* jury, having been charged with the intangible rights doctrine, was permitted to return "a conviction for conduct not within the reach of § 1341," 483 U.S. at 361, 107 S.Ct. at 2882, 97 L.Ed.2d at 303, and it reversed McNally's conviction.

As a result of the Court's decision in *McNally*, a significant number of pre-*McNally* criminal convictions have been challenged on the ground that they were based on the now-discredited intangible rights doctrine. In those cases in which the indictment, the proof presented at trial, and the "instructions to the jury could not assure that money or property interests were implicated, [verdicts] have been overturned on *McNally's* authority." *United States v. Asher*, 854 F.2d 1483, 1490 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989); *United States v. Ochs*, 842 F.2d 515 (1st Cir.1988); *United States v. Covino*, 837 F.2d 65 (2d Cir.1988); *United States v. Zauber*, 857 F.2d 137 (3d Cir.1988), *cert. denied sub nom, Scotto v. United States*, —— U.S. ——, 109 S.Ct. 1340, 103 L.Ed.2d 810 (1989); *United States v. Mandel*, 862 F.2d 1067 (4th Cir.1988); *United States v. Huls*, 841 F.2d 109 (5th Cir.1988); *United States v. Herron*, 825 F.2d 50 (5th Cir.1987); *United States v. Baldinger*, 838 F.2d 176 (6th Cir.1988); *United States v. Holzer*, 840 F.2d 1343 (7th Cir.1988); *United States v. Slay*, 858 F.2d 1310 (8th Cir.1988); *United States v. Dadanian*, 856 F.2d 1391 (9th Cir.1988); *United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988); *United States v. Italiano*, 837 F.2d 1480 (11th Cir.1988).

Marcello and Roemer maintain that *McNally* compels the vacating of their convictions because the indictment, proof at trial, and jury instructions do not assure that their convictions were based on a scheme involving money or other property interest. Our review of the record impels the conclusion that the intangible rights

---

2. The intangible rights doctrine utilized in mail and wire fraud prosecution was bottomed on the predicate that public officials have a fiduciary relationship with the citizens and owe them honesty and loyalty. When the official breaches these obligations, the citizens are deprived of the type of governance to which they are entitled.

3. James E. Gray, a Kentucky official, and Charles J. McNally, a private individual, were charged with a scheme (1) to defraud the citizens of Kentucky of their right to have the Commonwealth's affairs conducted honestly, and (2) to obtain, directly and indirectly, money and other things of value by means of false pretenses and the concealment of material facts. *McNally*, 483 U.S. at 353, 107 S.Ct. at 2878, 97 L.Ed.2d at 298.

theory was the sole basis on which the jury could have convicted the defendants.

■ The facts in *McNally* and those at bar are essentially identical. Both involve a scheme where a public official used his influence to cause placement of state insurance contracts and receives, or is to receive, a portion of the premium commissions. In *McNally* the indictment charged both an intangible rights deprivation and a property or money deprivation. The facts before us present an even stronger case for the application of the *McNally* holding because the indictment contains no property interest allegation whatever. Rather, it charges that the defendants

> did devise and intend to devise a scheme and artifice to defraud the citizens of Jefferson Parish, the City of New Orleans, and the State of Louisiana, of their right to the honest and faithful services of their elected and appointed officials.

The indictment also charged Roemer with a scheme

> to defraud the citizens of the State of Louisiana of the right to the conscientious, loyal, faithful, disinterested, unbiased services, actions, and performances of official duties of defendant Charles E. Roemer, II, in his official capacity as Commissioner of Administration for the State of Louisiana, free from bribery, kickbacks, corruption, partiality, bias, dishonesty, deceit, official misconduct, and fraud.

In the case at bar, the jury was not instructed that in order to convict it had to find that the public suffered a money or other property loss or that the state was deprived of control over how its money was spent. Nor was there any allegation that in the absence of the scheme, the state would have paid a lower premium or secured better insurance. Indeed, it appears from the record that one of the principal inducements for placing the insurance contracts with Hauser was the expectation that the state would save over $1,000,000 in premiums.

The scheme devised by Roemer and Marcello called for them to receive a portion of the commissions paid on the premiums. Those commissions did not belong to the State of Louisiana and would have been paid to others regardless of the agency through which the insurance was placed. Accordingly, we hold that the conduct described in the indictment against Roemer and Marcello does not constitute a violation of either the mail fraud or the wire fraud statute.[4]

■ The government argues, and the trial judge held, that the jury instruction cured the defect in the indictment. In denying post-conviction relief the district court stated that the instructions summarized the scheme as one "to defraud Louisiana citizens by illegally obtaining state insurance contracts through the bribery of public officials," and contained no reference to the defrauding of the citizens of non-property rights. This finding overlooks that part of the charge which informed the jury that the scheme was "substantially the same as the one alleged in the indictment." The indictment pointedly charged the deprivation of "the honest and faithful services of . . . elected and appointed officials." The charge specifically mentioned that each juror had been furnished a copy of the indictment (which had also been read to the jury at the beginning of trial) "for your use in the jury room during your deliberations," and advised that the jury could convict "only" of "the offenses set out in the indictment." As to mail and wire fraud, the indictment only charged intangible rights.

In reviewing jury charges our task is to examine the entirety of the charge to determine whether, taken as a whole, the charge correctly and adequately presents the law and the issues to be determined by the jury. *United States v. Rouse*, 452 F.2d 311 (5th Cir.1971). We hold that the jury instruction given in the case at bar fails for the same reason the Supreme Court found

---

**4.** We have heretofore followed *McNally* and vacated convictions tried on the intangible rights theory. *United States v. Huls,* 841 F.2d 109 (5th Cir.1988); *United States v. Herron,* 825 F.2d 50 (5th Cir.1987).

the *McNally* instruction insufficient: "[T]he jury instruction on the substantive mail fraud count permitted a conviction for conduct not within the reach of § 1341." *McNally*, 483 U.S. at 361, 107 S.Ct. at 2882, 97 L.Ed.2d at 303.

■ In its effort to remove this case from the ambit of *McNally* and to sustain the convictions, the government makes several arguments. First, the government cites article 3005[5] of the Louisiana Civil Code and contends that bribes paid to a state agent are the property of the state and that monies paid to Roemer were property belonging to the state. While we admire counsel's ingenuity, we are not persuaded. The agent's fiduciary duty to his principal was not the factual basis or theory upon which the grand jury indicted, and it was not the basis upon which the defendants were tried. *See United States v. Italiano*, 837 F.2d 1480 (11th Cir.1988); *Allen v. United States*, 867 F.2d 969, 972 (6th Cir.1989) ("the issue is not what [the defendant] might have been charged with when one examines his conduct in retrospect and recharacterizes it in light of *McNally*, but what charges actually were lodged against him, tried, and submitted to the jury").

■ The record in this case inexorably leads to one conclusion: the mail and wire fraud charges were tried as intangible right offenses. The indictment charged a scheme to defraud citizens of honest government, the prosecutor described it as such,[6] and the judge instructed the jury that it could convict upon finding the existence of a scheme as charged in the indictment.[7] The government would have the court perform a *nunc pro tunc* revision of the indictment and charge so that the convictions would conform to *McNally*. This we decline to do. A trial court may dismiss an indictment for failure to charge an offense, or refuse to allow an indictment to go to the jury for insufficient evidence, but the court may not retrospectively redraft an indictment to support a conviction on facts or theories upon which the defendant was not charged, tried, and convicted. *See Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

■ The government next contends that the payment to Roemer belonged to the state under a constructive trust theory. There is no factual basis for this argument; the indictment does not allege that the state was either entitled to or deprived of the bribe money.

■ Having concluded that the mail and wire fraud charges at bar do not constitute crimes, we must determine the effect of that holding on the RICO conspiracy convictions. Can either RICO conspiracy conviction survive the conclusion that there were no mail or wire fraud offenses charged and proven in the trial of Marcello and Roemer? A valid RICO conspiracy conviction requires proof that the defendants conspired to engage in a pattern of

---

5. Louisiana Civil Code Article 3005 provides that an agent "is bound to restore to his principal whatever he has received by virtue of his procuration."

6. In his opening statement to the jury, the prosecutor characterized the offense as follows:

The objects of the conspiracy charged [and] those of the wire and mail fraud scheme to defraud are the same. Basically the Defendants are charged with a bribery scheme to defraud the citizens of the State of Louisiana, Jefferson Parish, and New Orleans of their right to the honest and faithful services of their elected and appointed officials in the state and local government.

Just as citizens have certain obligations such as jury service or military service, all citizens have a right to have the affairs of government conducted free from bribery, kickbacks, dishonesty, and fraud.

\* \* \* \* \* \*

The evidence will show that Mr. Marcello and the other four Defendants, Roemer, Marinello, Davidson, and Young, were a corrupting influence to the affairs of government. They intentionally and willfully engaged in a conspiracy and a scheme to defraud the citizens of the State of Louisiana, Jefferson Parish, and New Orleans of their right to the honest and faithful services of their elected and appointed officials, free from bribery, kickbacks, dishonesty, and fraud.

7. In the course of rejecting post-conviction relief, the trial judge recognized that the jury had not been instructed on the property interest envisioned by La.Civil Code art. 3005.

racketeering activity. Proof of a pattern of racketeering activity requires proof of at least two predicate acts, each of which must be a criminal offense. 18 U.S.C. § 1962(c).

Count 2 of the indictment charged Roemer with three predicate acts: state bribery, mail fraud, and wire fraud. With the *McNally*-commanded evaporation of the mail and wire fraud charges, there are no longer two predicate acts to support a RICO conviction. Accordingly, Roemer's conviction must be vacated. *United States v. Alexander*, 850 F.2d 1500 (11th Cir. 1988), *cert. denied sub nom., Grider v. United States*, — U.S. —, 109 S.Ct. 1346, 103 L.Ed.2d 814 (1989). *See also Mandel; Holzer.*

■ In addition to the bribery, mail and wire fraud offenses, Marcello was charged with an interstate travel act violation. The jury returned a general verdict of guilty on the RICO conspiracy count but returned verdicts of not guilty on the substantive mail fraud, wire fraud, and interstate travel act charges. As a consequence, it is not possible to discern what decision the jury made with respect to the various predicate acts. Assuming the propriety of a jury verdict, as we must, the guilty verdict establishes that the jury found at least two predicate acts proven. We can only speculate as to which two.

Without some indication that the jury rested its RICO conviction on two legally sufficient predicate acts, and not on either the mail or wire fraud charges, we must reverse Marcello's conviction. The Second Circuit faced a similar situation in *United States v. Ruggiero*, 726 F.2d 913 (2d Cir.), *cert. denied sub nom., Rabito v. United States*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984), in which both legally sufficient and legally insufficient predicate acts were charged. In reversing a RICO conviction our colleagues stated that

> absent some indication by the jury that its determination of guilt rested on two or more predicate acts that are legally sufficient, we are required to reverse the conviction because the legally insufficient predicate act ... may have been necessary to the verdict.

726 F.2d at 921; *Ingber v. Enzor*, 841 F.2d 450 (2d Cir.1988). *See Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931) (holding that where there is doubt as to whether a conviction is predicated on an impermissible ground, that doubt must be resolved in favor of the defendant and the conviction vacated); *see also Mandel*, 862 F.2d at 1074; *Holzer*, 840 F.2d at 1352.

If these cases were before us on direct appeal both convictions would be reversed, but that result does not necessarily obtain on collateral review. The circuits addressing the question have concluded that *McNally* can be applied retroactively in a habeas or *coram nobis* proceeding. *See Mandel; Ingber; United States v. Shelton*, 848 F.2d 1485 (10th Cir.1988).

■ Marcello seeks relief under 28 U.S. C. § 2255. Ordinarily, a habeas petitioner who raises an instructional error for the first time in a collateral attack must satisfy the cause and prejudice standard of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). It is well settled in this circuit, however, that the *Sykes* claim is waived if it is not raised. *Smith v. Estelle*, 602 F.2d 694, 708 n. 19 (5th Cir.1979); *Washington v. Watkins*, 655 F.2d 1346, 1368 (5th Cir.1981). In the case at bar, the government did not raise the procedural bar, but, rather, recognized that the defendants had cause for failing to object to the intangible rights theory. Consistent therewith, the district court considered only the merits of the petitions. The appellate function in habeas cases, as in others, is limited to reviewing that which has been presented to the district judge. *Baker v. Estelle*, 711 F.2d 44 (5th Cir.1983) ("Since there is no evidence that ... the district court denied the petition on the procedural ground, we refuse to consider it on review."). Marcello's claim is to be considered on the merits. We conclude that he is entitled to relief under section 2255.

Roemer brought his petition for *coram nobis* relief under the All Writs Statute, 28 U.S.C. § 1651. *Coram nobis* is appropriate only where the petitioner can demonstrate that he is suffering civil disabilities as a consequence of the criminal convictions and that the challenged error is of sufficient magnitude to justify the extraordinary relief. *Puente v. United States,* 676 F.2d 141 (5th Cir.1982); *United States v. Hay,* 702 F.2d 572 (5th Cir.1983). In *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), the Supreme Court held that *coram nobis* should issue to correct only errors which result in a complete miscarriage of justice. An error of "the most fundamental character" must have occurred and no other remedy may be available. *Id.* at 512, 74 S.Ct. at 253. On appeal the government does not challenge the propriety of the use of this writ. In this case, Roemer appealed his case at each stage in the proceedings and, being denied all relief, served his sentence. The only meaningful remedy available to him is that provided by the writ of *coram nobis. McNally* makes clear that Roemer was indicted[8] and convicted under the RICO statute for conduct which is not a federal offense. He sought relief promptly after *McNally.* Accordingly, he must be absolved of the consequences flowing from his branding as a federal felon.

For the foregoing reasons, the decision of the district court is REVERSED and the convictions of Roemer and Marcello are VACATED.

---

**8.** The cause and prejudice standard of *Sykes* does not apply to claims regarding the sufficiency of the indictment.