**UNITED STATES of America, Plaintiff–Appellee Cross–Appellant,**

v.

**Marsden W. MILLER, Jr., and William C. Huls, Defendants–Appellants Cross–Appellees.**

**No. 90–3512.**

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1992.

John M. McCollam, Robert B. Wiygul, Gordon, Arata, McCollam & Duplantis, New Orleans, La., William T. D'Zurilla, Francis M. Bouillion, Benjamin B. Blanchet, Lafayette, La., Edward M. Booth, Jacksonville, Fla., for Marsden W. Miller, Jr.

Camille F. Gravel, Jr., Alexandria, La., William H. Jeffress, Jr., Miller, Cassidy, Larroca & Lewin, Washington, D.C., for William C. Huls.

P. Raymond Lamonica, U.S. Atty., Baton Rouge, La., James M. Cole, Deputy Chief, Public Integrity Section, U.S. Dept. of Justice, Washington, D.C., for U.S.

Before BROWN, KING, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Following the reversal by this Court of the mail fraud convictions of defendants-appellants Marsden W. Miller, Jr. (Miller) and William C. Huls (Huls) because the indictment and the jury instructions permitted the jury to convict without finding the deprivation of a property right, the government brought a new indictment. In this pretrial appeal, both Miller and Huls appeal from the district court's order denying their motions to dismiss the indictment on double jeopardy and collateral estoppel grounds. The government cross-appeals from the district court's collateral estoppel ruling to the extent that the district court thereby held that whether a stock sale by Huls to Miller was a sham was decided adversely to the government by acquittals on various counts at the first trial, and therefore may not be relitigated at the second trial.

### Facts and Proceedings Below

The facts are drawn from our opinion under the first indictment, *United States v. Huls*, 841 F.2d 109, 110 (5th Cir.1988):

"William C. Huls, a prominent figure in the Louisiana oil industry, was a founder and principal owner of the Exploration Company of Louisiana (XCL), along with Marsden W. Miller, Jr. In March 1984, the Governor of Louisiana, Edwin Edwards, appointed Huls Secretary of the Louisiana Department of Natural Resources. The post carried with it membership on the Louisiana Mineral Board, which awards oil and gas leases on state lands. Huls asked the Louisiana Ethics Commission for an advisory opinion on his ties to XCL, submitting information that the Government characterized at trial as distorted and incomplete. In May 1984, the Commission issued an advisory opinion recommending that Huls be barred from participating in any Mineral Board decisions in which XCL would have a 'substantial economic interest.' La.Rev.Stat. § 42:1102(21). Huls sold his XCL stock to Miller in June 1984, a transaction that the Government later labeled a sham.

"In July 1984, the Louisiana Mineral Board awarded a lease to drill oil and gas wells on state lands to a company called TIPCO. Although the bid was in TIPCO's name, TIPCO and XCL had formed a fifty-fifty partnership to submit it. Huls recommended to the Board that it grant the lease, and also successfully argued that TIPCO be relieved of the

usual well depth and letter of credit requirements.

"At trial the Government presented evidence that throughout this period, Huls continued to collect on an overriding royalty and on working interests in several XCL leases. The Government also showed evidence that XCL had given Huls a Mercedes, paid health insurance premiums, and paid for several airplane trips. Huls had allegedly pledged some of his royalty interests as collateral on an XCL note for over $5,000,000, giving him an interest in XCL's continuing viability. The government also presented evidence that Huls had an agreement to repurchase on demand a large block of the XCL stock he formerly held."

In November 1986, Miller and Huls were indicted on fifteen counts charging mail fraud and conspiracy to commit mail fraud. 18 U.S.C. §§ 2, 371, 1341. The indictment alleged that Huls' sale of his XCL stock to Miller was a sham, that Huls had other financial interests in XCL, that XCL had provided Huls various other benefits while he was in office, and that Huls and Miller conspired to hide these facts from both the Mineral Board and the Louisiana Ethics Commission. The indictment alleged that, despite having ties to XCL that mandated his recusal, Huls participated in the Board's decision to grant the leases to the XCL/TIPCO partnership.

Miller and Huls were convicted on only three and four counts, respectively, of the fifteen counts in the indictment. Miller was convicted on the conspiracy count and the two substantive counts relating to the granting of the leases. Huls was convicted on these same three counts, and also on

one of the two substantive counts relating to the Ethics Commission. Both defendants were acquitted on all ten counts relating to the alleged sham stock sale.

While the defendants' appeal to this Court was pending, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that mail fraud covers only fraudulent schemes intended to deprive the victim of money or property and rejected lower court decisions that had authorized convictions without proof of such conduct. This Court reversed the defendants' convictions in light of *McNally* because the indictment and jury instructions did not require the government to prove all the elements of mail fraud. *Huls*, 841 F.2d at 112.[1]

The government procured a new, six-count indictment, which included two new counts that had not been charged in the first indictment. The district court granted the defendants' motion to dismiss these two new counts for prosecutorial vindictiveness, and the government has not appealed this ruling. Although the phrasing of the indictment has been changed in an attempt to comply with *McNally*, Miller and Huls now stand indicted again on essentially the same three and four counts, respectively, on which they were convicted at the first trial.

The defendants sought dismissal of the new indictment on double jeopardy and collateral estoppel grounds. The district court struck language from the indictment pertaining to the alleged sham stock sale but otherwise denied the motions. Arguing that retrial is barred on double jeopar-

---

1. Our prior opinion concludes by stating:

 "The Government also argues that the jury heard ample evidence that Huls and Miller did deprive the State of a property right—the right to manage its mineral wealth. We express no opinion on this assertion, for it is beside the point at issue before this Court. Even if the jury could have convicted Huls and Miller on the same evidence under a correct view of the elements of the offense, the conviction cannot stand if there is a real possibility that the jury convicted on an *incorrect* view.... The jury in the instant case was told several times that it was not required to

 find deprivation of a property right to convict. We cannot assume that these repeated instructions had no effect.

 "In sum, the convictions must be reversed because the indictment and jury instructions did not require the jury to find all the elements of the crime.... Since reversal is based on defects in the indictment and jury instructions rather than on insufficiency of the evidence, there is no apparent obstacle to retrial, should the Government seek a new indictment. This Court expresses no opinion on the merits of any such case." *Id.*

dy and collateral estoppel grounds, Miller and Huls have perfected this interlocutory appeal. The government has cross-appealed from the district court's order striking the allegations of the sham stock sale from count one of the indictment (the conspiracy count).

## Discussion

Miller and Huls contend that reprosecution is barred by the Double Jeopardy Clause. They advance three primary arguments in support of this contention. First, they argue that retrial is barred because the government never presented a valid mail fraud theory at the first trial, in particular in the jury instructions, and was not prevented from doing so by any adverse trial court ruling. Second, they contend the Supreme Court's recent ruling in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), bars this reprosecution on a new theory not presented at the first trial, although available to the government there. Third, they argue that there was insufficient evidence to support a conviction on a valid mail fraud theory, and thus retrial is barred. Although some of these arguments are not without force, we must reject them under controlling Supreme Court precedent.

In a line of precedent almost a century old, the Supreme Court has repeatedly stressed that the Double Jeopardy Clause does not preclude the government from retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction. *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 1826, 95 L.Ed.2d 354 (1987); *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 2193–94, 57 L.Ed.2d 65 (1978); *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896). As the Court explained in *Tateo:*

"While different theories have been advanced to support the permissibility of retrial, of greater importance than the conceptual abstractions employed to explain the Ball principle are the implications of that principle for the sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction. From the standpoint of a defendant, it is at least doubtful that appellate courts would be as zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." 84 S.Ct. at 1589.

The defendants fault the government for failing to present a valid (property rights) theory of mail fraud at the first trial. They further note that the government gained certain strategic advantages, including the exclusion of certain evidence favorable to the defendants, by not pursuing such a theory. Relying on cases such as *Davis v. Herring*, 800 F.2d 513 (5th Cir. 1986), they argue that double jeopardy principles bar reprosecution of a defendant on "charges that, through errors of law or strategy, are not ultimately presented to the jury." *Id.* at 519; *see also Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). Both *Davis* and *Grady* involved separate charges in a successive prosecution, however, and this case does not. The government brings its charges under the very same criminal statute—mail fraud—under which it brought the first prosecution. Although this Court reversed the convictions in the first appeal because the Supreme Court in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), invalidated an entire class of mail fraud prosecutions brought under the "good government" or "intangible rights" theories, the actual impact of *McNally* was that this Court found the indictment and jury instructions at the first trial to have been wanting. In the words of our opinion rendered in the first appeal,

this Court reversed "because the indictment and jury instructions did not require the jury to find all the elements of the crime." *Huls*, 841 F.2d at 112. As this Court foreshadowed in the first appeal, both of these grounds for reversal are mere trial errors for which double jeopardy principles do not preclude retrial: "Since reversal is based on defects in the indictment and jury instructions rather than on insufficiency of the evidence, there is no apparent obstacle to retrial, should the Government seek a new indictment." 841 F.2d at 112. The Supreme Court has so held specifically with respect to defects in the charging instrument in *Montana v. Hall*, 481 U.S. 400, 107 S.Ct. 1825, 1827, 95 L.Ed.2d 354 (1987), and *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896), and with respect to jury instructions in *Forman v. United States*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), *cited in Tateo*, 84 S.Ct. at 1589.

■ There is an exception to the *Ball* principle, however, where the appellate reversal is for insufficient evidence to support a conviction. In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court, overruling prior precedent, held that appellate court reversal of a conviction for insufficient evidence is the functional equivalent of a verdict of acquittal and thus bars reprosecution for the same offense. The defendants argue that the evidence at the first trial was insufficient to support a conviction on a valid mail fraud theory. They raised this claim at the first trial,[2] and they argue—not unreasonably—that they are entitled to a review of the sufficiency of the evidence at this time. It would be unconscionable, they argue, for them to have to endure the ordeal of a second trial simply because there was an even more glaring error that mandated reversal of their convictions in the first appeal.

A case on point supporting the defendants' claim that they are entitled to a review of the sufficiency of the evidence at

the first trial is *United States v. Sneed*, 705 F.2d 745 (5th Cir.1983). In *Sneed*, the defendant's conviction had been reversed in an earlier appeal for errors in the jury selection at his trial. *Id.* at 746. The Court at that time declined to address his alternative contention that the evidence was insufficient to sustain the jury's verdict. *Id.* In an interlocutory appeal from the trial court's refusal to halt a pending retrial as barred by the Double Jeopardy Clause, this Court held that it had jurisdiction to hear the appeal and, because evidence at the first trial was insufficient, retrial was barred by double jeopardy principles. *Id.* at 747–50. In *Sneed* we distinguished *United States v. Becton*, 632 F.2d 1294 (5th Cir.1980), *cert. denied*, 454 U.S. 837, 102 S.Ct. 141, 70 L.Ed.2d 117 (1981), in which this Court declined to entertain an appeal seeking review of the sufficiency of the evidence at the first trial following a mistrial for a hung jury, and *United States v. Rey*, 641 F.2d 222 (5th Cir.), *cert. denied*, 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981), in which this Court refused to hear a similar appeal following a trial judge's grant of a new trial, after a guilty verdict, because of "arguably erroneous" jury instructions. The basis on which *Sneed* distinguished *Becton* and *Rey* was that in both those cases "we considered the appeals efforts to obtain review of the actions taken on motions to acquit made in earlier trials," while the *Sneed* appellant was not seeking reconsideration of the earlier panel's refusal to address the sufficiency of the evidence issue on the first appeal. *Sneed*, 705 F.2d at 747.

Although *Sneed* directly supports the defendants' double jeopardy arguments, we conclude that it is no longer good law because an intervening Supreme Court decision has resolved the question adversely to the defendants. In *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), the Supreme Court held that "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal,

---

**2.** Although only Huls clearly raised this issue in the first appeal, each defendant adopted the

arguments made in his codefendant's brief. They do the same in this appeal.

which terminates the original jeopardy." *Id.* 104 S.Ct. at 3086; *see also Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 1813–14, 80 L.Ed.2d 311 (1984). We recognize that *Richardson* was an appeal asserting a double jeopardy claim which followed a mistrial,[3] but its holding is clearly not limited to such cases. It refuses to extend *Burks* beyond instances in which the appellate court *in fact* reversed for insufficient evidence. As the Court explained: "Our holding in *Burks* established only that an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal...." 104 S.Ct. at 3086. The central concept of *Richardson* is that there is no *double* jeopardy unless the original jeopardy has *terminated;* and it is abundantly clear that a reversal for instructional error is no more a termination of jeopardy than a mistrial where the jury is unable to agree.[4] And it is evident that the implications of *Richardson* for a case such as this one did not escape the attention of the *Richardson* court. Indeed, Justice Brennan in dissent complained of the Court's narrow reading of *Burks:* "Apparently, under the Court's approach, only an actual judgment of acquittal, or an unreversed conviction, would 'terminate' jeopardy and thereby bar retrial." *Id.* at 3087 (Brennan, J., dissenting). He further complained that the Court's holding in *Burks* could be undermined by appellate court refusals to rule on insufficiency of the evidence claims and

instead reversing on other grounds. *Id.* at 3089.

■ The defendants argue that *Richardson* actually supports their position because the Supreme Court reversed a lower court's dismissal of the appeal for lack of jurisdiction, and rejected the double jeopardy claim on the merits for reasons limited to jurisprudence related to mistrials. We disagree. The Court assumed jurisdiction over the appeal because it found the double jeopardy question to have been colorable, in light of the differing rulings in the various courts of appeals. After resolving the question on the merits adversely to the defendant in that case, the Court noted that a future appeal raising the same question would no longer be colorable and consequently would not be appealable before final judgment. *Id.* at 3086 n. 6.[5] As noted, the basis of the ruling was merely that the original jeopardy had not terminated, not anything limited or peculiar to mistrials.

The defendants argue that various post-*Richardson* cases have held that a defendant is entitled to a review of the sufficiency of the evidence at the first trial prior to retrial. In general, however, these cases hold only that an appellate court should, or in the exercise of its discretion normally will, review the sufficiency of the evidence as well even if it has already determined that a conviction must be reversed on other grounds. In *United States v. Szado,* 912 F.2d 390 (9th Cir.1990), a district judge ruling on an appeal from a non-jury trial before a magistrate declined to review the

---

**3.** At the original trial the defendant unsuccessfully moved for judgment of acquittal at the close of the government's case in chief and at the close of all the evidence; the case was submitted to the jury, which returned an acquittal on one count but was unable to agree on the other two counts. The district court therefore declared a mistrial on the latter two counts, and scheduled retrial as to them. The defendant then renewed his motion for judgment of acquittal on the latter two counts and also moved to bar retrial on the basis of double jeopardy; the district court denied both motions, and the defendant promptly appealed. *Id.* 104 S.Ct. at 3082–83.

**4.** We observe that *Sneed* does not even address the termination of jeopardy concept on which

*Richardson* rests, much less suggest that appellate reversal for trial error is more of a termination of jeopardy than a hung jury mistrial or a trial court post-verdict new trial. Conversely, *Richardson* does not rely on the theory (which *Sneed* attributes to *Becton* and *Rey*) that the defendant there was seeking review of the rulings on his motions for judgment of acquittal.

**5.** We likewise find the double jeopardy claim in this appeal to be colorable in light of our prior holding in *Sneed,* and we have therefore reached the merits of the double jeopardy claim. In light of our holding today, future appeals raising similar claims will no longer be colorable and will not be appealable before final judgment in this Circuit.

sufficiency of the evidence and reversed on other grounds. On further appeal, the Ninth Circuit held that the district judge should have reviewed the sufficiency of the evidence despite the presence of other grounds for reversal, because a finding of insufficient evidence would preclude retrial. *Id.* at 393. The Ninth Circuit applies a similar rule when it is an appellate court of the first instance reviewing a conviction before a district judge. *Id.* The Sixth Circuit has also determined that it will review the sufficiency of the evidence even if the conviction will be reversed on other grounds. *United States v. Quinn*, 901 F.2d 522, 529 n. 5 (6th Cir.1990). The Seventh Circuit has held that it will review the sufficiency of the evidence even if it has determined that the conviction must be reversed on other grounds, not because *Burks* or *Richardson* commands that it do so, but because it has determined to do so as a matter of policy. *United States v. Anderson*, 896 F.2d 1076, 1078 (7th Cir. 1990). Far from holding that a review of the sufficiency of the evidence can be had later if a conviction is reversed on other grounds, these cases indicate that the sufficiency of the evidence will be reviewed in the first appeal *in order* to prevent defendants from having to face a second trial where there was insufficient evidence to convict at the first trial. Likewise, in *United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988), in which the Supreme Court affirmed the reversal of a conviction by the Sixth Circuit for faulty jury instructions, the Supreme Court merely concurred with the lower court's conclusion that retrial was not barred because there was sufficient evidence to support a conviction under the stricter standard upheld by the Supreme Court. *Id.* 108 S.Ct. at 2765. The Court did not suggest that the Sixth Circuit was required to reach the sufficiency of the evidence question, nor did it indicate that such a claim could be

raised later if the court of appeals had declined to decide it. *Id.*

Some other post-*Richardson* cases support the defendants' argument that they are entitled to a review of the sufficiency of the evidence at this time. In *United States v. Slay*, 717 F.Supp. 689 (E.D.Mo. 1989), a district court dismissed a new indictment after the first conviction was set aside by the same court prior to sentencing after the Supreme Court decided *McNally* and rejected the "good government" theory that predominated in *Slay*. The court held that retrial was barred because the government "failed to really develop a property theory at the initial trial." *Id.* at 696. *Slay* relied heavily on *United States v. Gray*, 705 F.Supp. 1224 (E.D.Ky.1988), which was the Supreme Court's *McNally* case on remand, and which also refused to allow a retrial because valid mail fraud theories, although "technically presented" to the jury, "were in reality not presented to the jury." *Id.* at 1233.[6] None of these cases cite *Richardson*, and we are unable to reconcile their results with the Supreme Court's holding in *Richardson*. The Third Circuit has also come very close to endorsing the rule advocated by the defendants here. In *Vogel v. Commonwealth of Pennsylvania*, 790 F.2d 368, 376 (3d Cir. 1986), the court reaffirmed its prior rule that "when a defendant raises an insufficiency of evidence contention that the trial court finds unnecessary to address [because it grants a new trial on other grounds], a court subsequently presented with a double jeopardy argument must address and resolve that issue." The case *sub judice* differs from *Vogel* in that it involves the setting aside of a conviction by an appellate court and not a trial court, but that distinction strikes us as unimportant in light of the Supreme Court's holding in *Burks* and *Richardson*'s reliance on the fact that there was no termination of jeopardy. *Vogel* does not discuss *Richardson*, however, and to the extent it would indi-

---

6. In *United States v. Mandel*, 862 F.2d 1067 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989), the Fourth Circuit affirmed a district court order setting aside the ten-year-old convictions of Governor Mandel and his co-defendants in light of the Supreme

Court's *McNally* decision. The court further observed: "Mandel, et al[.], may not be tried for the same crime. The Supreme Court has made that clear in *McNally*." *Id.* at 1075–76 n. 14. The court does not elaborate on this comment, which is buried in a footnote.

cate that the defendants are entitled to a review of the sufficiency of the evidence at this time following the reversal of their convictions on other grounds and the denial by the district court of their motions to dismiss the indictment for double jeopardy, we respectfully decline to follow *Vogel.*

◼ Following *Richardson*, we hold that double jeopardy does not bar this retrial, and because under *Richardson* jeopardy has not terminated, double jeopardy will not be available as a ground for challenging any subsequent conviction that may result. *See United States v. Richardson*, 702 F.2d 1079, 1092–94 (D.C.Cir.1983) (Scalia, J., dissenting), *rev'd sub nom. Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984).[7] We note that our holding in this respect, and our construction of this portion of the Supreme Court's opinion in *Richardson*, is supported by the holding and opinion of the First Circuit in *United States v. Porter*, 807 F.2d 21 (1st Cir.1986).

◼ Although not mandated by the double jeopardy clause, it is accordingly clearly the better practice for the appellate court on an initial appeal to dispose of any claim properly presented to it that the evidence at trial was legally insufficient to warrant the thus challenged conviction.

The defendants also argue that collateral estoppel bars the government from now charging them with participation in a sham stock sale. Miller further argues that collateral estoppel bars the government from charging him with participation in a fraud on the Louisiana Ethics Commission. The district court deleted the allegations of the sham stock sale from the indictment,[8] but the defendants argue that because the indictment relies substantially on these allegations, mere deletion of the invalid charges will not suffice; instead, the entire indictment must be dismissed. They argue alternatively that the indictment has been so altered that it must be dismissed and that the indictment is now insufficient to state a mail fraud offense.

◼ Although denominated by defendants as a claim of collateral estoppel, this is actually an attack on the sufficiency of the indictment for which this Court lacks jurisdiction to entertain in an interlocutory appeal. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977), *United States v. Slay*, 858 F.2d 1310, 1313–14 (8th Cir.1988). Accordingly, this portion of the defendants' appeal must be dismissed, without prejudice to their right to raise the contention in a later appeal if they are convicted.

◼ In his reply brief, Miller alternatively seeks the more limited relief of deletion of those portions of the indictment charging him with participation in a fraud on the Ethics Commission. Under some circumstances, a pretrial appeal is available to seek *deletions* from an indictment on collateral estoppel grounds. *See United States v. Larkin*, 611 F.2d 585, 586 (5th Cir.1979) (on petition for rehearing). Nonetheless, Miller failed to raise as a point of error in his appeal his argument that he is entitled to additional deletions from the indictment, raising it only in his reply brief. Accordingly, this issue has been waived. *See United States v. Winn*, 948 F.2d 145, 157 (5th Cir.1991); *United States v. Mejia*, 844 F.2d 209, 214 n. 1 (5th Cir.1988). *See*

---

7. Although some had warned prior to *McNally* that "good government" mail fraud prosecutions were on uncertain ground, *see United States v. Curry*, 681 F.2d 406, 418 (5th Cir.1982) (concurring opinion), we find no deliberate prosecutorial overreaching that might bar retrial. *See Robinson v. Wade*, 686 F.2d 298 (5th Cir.1982). The first indictment here was returned years after *Curry* was handed down, and the majority opinion there clearly authorized such a theory. *Certiorari* was granted in *McNally* before this case was tried, though after the intangible rights theory first indictment had been returned. *See McNally v. United States*, 479 U.S. 1005, 107

S.Ct. 642, 93 L.Ed.2d 698 (1986) (*McNally* was argued in the Supreme Court about a week after the trial here concluded). Nevertheless, the government was not guilty of overreaching for trying this case in accordance with the then clear law of this Circuit.

8. The district court did not accept Miller's collateral estoppel argument with respect to the allegations that Miller was part of a scheme to defraud the Ethics Commission and therefore did not strike that language from the indictment.

also, e.g., *Najarro v. First Fed. Sav. & Loan Ass'n*, 918 F.2d 513, 516 (5th Cir. 1990). Because we deem this issue not to have been properly preserved for our review in this interlocutory appeal, Miller, if necessary, will be able to seek review of this aspect of the district court's double jeopardy ruling in a subsequent appeal if he is convicted.

 The government has filed a cross-appeal in this case, contending the district court erred in holding that the doctrine of collateral estoppel bars the government from relitigating the issue of whether the stock sale was a sham. The government cannot appeal in a criminal case without express statutory authorization. *See, e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977). This Court has jurisdiction to hear the appeal, if at all, under 18 U.S.C. § 3731, which supplies that authorization in specified instances.[9] The government argues that the district court's deletion of the sham stock sale allegations from the indictment restricted the evidence that it could present at trial and is thus appealable under § 3731. We find this argument to be reasonable, even though the order the government seeks to appeal is not denominated a "suppression order" and did not purport to exclude evidence as such. *See United States v. Helstoski*, 442 U.S. 477, 99 S.Ct. 2432, 2439 n. 6, 61 L.Ed.2d 12 (1979). Nonetheless, the government concedes that it failed to file a timely certificate with the district court "that the appeal was not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding," although § 3731 required it to do so. The government has now filed such a certificate, and correctly notes that the late filing, although not regarded with favor, does not rise to jurisdictional dimensions. *United States v. Crumpler*, 507 F.2d 624 (5th Cir.1975).

 However, the equities of this case, involving a second prosecution, do not favor excusing the government's tardy filing of its § 3731 certificate. The certificate was filed seven months after the entry of the district court's order and six months after the filing of the government's notice of appeal. It was filed only after the defendants raised the issue of its absence in their briefs to this Court. If the requirement of the timely filing of a certificate is to have substantial meaning, the government's appeal here should be dismissed. Indeed, the purpose of the certificate requirement is to ensure the government has verified the propriety of its appeal, and so certified to the district court, at the time it files its notice of appeal. That purpose is defeated by the perfunctory filing of the certificate after the appeal has been docketed and briefed and within days of its argument in this Court.[10]

---

9. Section 3731 provides in pertinent part as follows:

"In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

"An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and

that the evidence is a substantial proof of a fact material in the proceeding.

 \* \* \* \* \* \*

"The appeal in all cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

"The provisions of this section shall be liberally construed to effectuate its purposes."

10. We do agree with the government's observation that one of the purposes of requiring the certificate—ensuring the appeal is not taken for the purpose of delay—is of more limited concern where, as here, the defendants have already delayed the trial by their own appeal. Nonetheless, we do not believe the defendants' appeal obviates the need for the certificate, particularly where, as here, the government successfully contends that this Court lacks jurisdiction to entertain the defendants' collateral estoppel claims at this time.

The government in the alternative argues that the district court's order can be viewed as dismissing a count of the indictment, which is appealable under § 3731 without the filing of a certificate. We disagree. Some courts have allowed such appeals if the stricken language would constitute an entire discrete or independent basis of liability that could have been charged as a separate count. *United States v. Levasseur,* 846 F.2d 786, 790 (1st Cir.1988); *United States v. Tom,* 787 F.2d 65, 69–71 (2d Cir.1986); *United States v. Margiotta,* 662 F.2d 131, 139–40 (2d Cir.1981). We do not consider that to be the case here. And clearly, it was not duplicitous to include the stock sale language in count one. Moreover, because the striking of language almost always limits the government in its proof at trial, such appeals normally can be taken under the second paragraph of § 3731 upon the filing of the required certificate. Accordingly, we believe it inappropriate to read the first paragraph of § 3731 broadly to avoid the certificate requirement here. There is no pending trial to delay when an entire indictment has been dismissed, and that is the reason no certificate is required for the government to appeal such a dismissal.[11] Here the indictment was not dismissed, and the government does not complain of the dismissal of any entire count, and we refuse to imply a dismissal in order to contravene the certificate requirement. We do not exclude the possibility of allowing appeals under the first paragraph of § 3731 that do not in terms involve the dismissal of an entire count or counts of an indictment, but to come under the first paragraph the district court must have done substantially more than merely limit the government's proof at trial.

### Conclusion

For the foregoing reasons, we AFFIRM in part with respect to the appeals of Miller and Huls, DISMISS in part their appeals for lack of jurisdiction, and DISMISS the government's cross-appeal.

---

**11.** Similarly, where one or more entire discrete counts have been dismissed, there is no pending trial of those counts to be delayed, even if others remain to be tried.

---

AFFIRMED in part; DISMISSED in part.